NOVEMBER TERM, 1905. 685

Indiana Trust Co. v. International, etc., Assn.—36 Ind. App. 685.

INDIANA TRUST COMPANY v. INTERNATIONAL
BUILDING & LOAN ASSOCIATION.

[No. 5,232. Filed June 2, 1905. Rehearing denied October 10,
1905. Transfer denied December 8, 1905.]

INDIANA TRUST COMPANY v. INTERNATIONAL
BUILDING & LOAN ASSOCIATION NO. 2.

[No. 5,233. Filed June 2, 1905. Rehearing denied October 10,
1905.]

1. CORPORATIONS.—By-Laws.—Waiver.—The rule of corporate
action is found in the corporation's by-laws, the requirements of
which may be waived by the stockholders' knowingly permitting
a disregard of same or by ratifying the action of officers in
violation thereof.   p. 690.

2. SAME.—Principal and Agent.—Payment to Agent.—Tracing
Fund.—Where a person pays money to an agent authorized to
receive same, it is not incumbent upon him to trace such funds
into the hands of the principal in order to bind such principal.
p. 690.

3. SAME. — Building and Loan Associations.—Officers.—Official
Deposits.—Where the treasurer of a building and loan associa-
tion was relieved for an indefinite time on account of sickness,
the secretary, with the knowledge of the board of directors and
stockholders, receiving and disbursing the funds, and the treas-
urer turned over to such secretary the sum of $5,000 belonging
to such funds which was deposited in bank in the official name
of such secretary, such association is bound by such payment
and can not recover same from such treasurer.   p. 691.

4. TRIAL. — Special   Findings. — Conclusions. — Principal   and
Agent.—A finding that the treasurer of a building and loan
association was not "authorized" by the board of directors to
pay money to the secretary thereof is a legal conclusion, and
ineffective; and a finding that such payment was not "reported"
to the directors is immaterial, such secretary having power on
behalf of such association to receive it.   p. 692.

5. SAME. — Special   Findings. — Failure   to   Find   Fact   Where
Adversary Has Proof.—Where the plaintiff has in his possession
the means of proving a certain fact and the defendant has not,
a failure to find such fact operates against plaintiff, the burden
of proof as to such fact being on him.   p. 692.

6. TRIAL.—*Set-Off.*—*When Allowed Though Not Pleaded.*—When justice requires it, and the special findings show all of the facts, the theory followed at the trial, allowing a set-off under the issues, will be recognized on appeal.   p. 692.

7. CONFUSION OF GOODS.—*Payments.*—*Division.*—*Distribution.*— *Maxims.*—Where the treasurer of two corporations paid $5,000 to the secretary of such corporations, without any suggestion as to which it belonged, it will be apportioned in proportion to the amount such treasurer held of the money of such corporations, the maxim, "equality is. equity," applying.   p. 693.

8. BUILDING AND LOAN ASSOCIATIONS.—*Loans.*—*Failure to Execute Note and Mortgage.*—Where the treasurer of a building and loan association received a loan therefrom and credited same on his books as paid, the failure to execute the required note and mortgage does not prevent the collection of same from his estate.   p. 694.

From Marion Circuit Court (C. D. 7,759, 7,760); *Austin F. Denny,* Special Judge.

Actions by International Building & Loan Association and International Building & Loan Association No. 2 against the Indiana Trust Company as executor of the will of Norman S. Byram, deceased. From judgments for plaintiffs, defendant appeals. (For decision in No. 5,233, appealed to Supreme Court under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10, see 165 Ind. 597). *Reversed.*

*Ayres, Jones & Hollett* and *Nelson, Myers & Yarlott,* for appellant.

*Chambers, Pickens, Moores & Davidson* and *Harding, Hovey & Wiltsie,* for appellees.

ROBY, J.—Appellee in each of the above-entitled cases began proceedings by filing claims against the estate of Norman S. Byram, deceased, of which appellant was executor, each of which claims was disallowed and thereafter came upon the trial docket. The claim filed by the International Building & Loan Association was for $4,914.90. That filed by the International Building & Loan Association No. 2 was for $8,741.48. A number of identical paragraphs of answer were filed in each case for money had and

received, all of them being based upon the $5,000 transaction hereafter detailed.

Special findings, with conclusions of law thereon, were made and stated in each case in accordance with which judgment was rendered in appellees' favor, without any credit on account of said transaction being given. The findings are, so far as controverted questions are concerned, in the same terms, and closely follow the evidence. It is made to appear that the International Building & Loan Association was incorporated in 1889, and that the International Building & Loan Association No. 2 was incorporated in 1891. The decedent was treasurer and Charles Schurmann was secretary of both said associations from the time they were formed, decedent's service terminating with his death, and that of Schurmann continuing up to the time of the trials. Both treasurer and secretary were directors in each association, the boards of directors of which were filled by the same persons, and the by-laws of which were in all respects uniform.

The duties of the secretary, so far as relevant, were to receive all moneys paid into said associations; to pay the same out at the end of each day to the treasurer, taking his receipt therefor; to keep all accounts of the associations; to draw and sign all orders on the treasurer; keep the books at all times subject to the inspection of the board; to see to the settlement of all claims and bills; to have the appointment and general supervision over all employes, agents and agencies; to be the custodian of all mortgages, deeds, etc., and once each quarter to compare his books with those kept by the treasurer, reporting discrepancies to the board.

The duties of the treasurer were to receive all moneys from the secretary; to pay all orders drawn upon him by the president and secretary; to keep a correct account of all moneys received and paid out; to be the custodian of all bonds received for loans and of other securities not in the

688    APPELLATE COURT OF INDIANA,

Indiana Trust Co. *v.* International, etc., Assn.—36 Ind. App. 685.

custody of the secretary; to make a statement of the business of the office to the board, when required, and to compare his books once each quarter with those kept by the secretary, reporting discrepancies to the board.

On June 4, 1894, decedent was in poor health, and had arranged to sojourn indefinitely in California. The directors of both associations on said day by formal resolution granted an indefinite leave of absence to him. No record was made as to the manner in which the business of the associations should be carried on during his absence. On the following day, June 5, decedent made his check against association funds in his hands as follows: "Indianapolis, Indiana, June 5, 1894. No. 6. Merchants National Bank: Pay to the order of Charles Schurmann $5,000. N. S. Byram, treas'r." At the same time he wrote on the back of said check as follows: "This check was given by me to Mr. Schurmann against the funds of the Nat. Bldg. Assn. for which he gave me no receipt, and he is indebted to me or to the association to that amount; he has a memo. of same in tin box in secretary's office. N. S. Byram." He delivered said check to Schurmann, and they together went to the bank, where Schurmann indorsed it by writing his name across the back, and thereupon opened a deposit account with said bank as "Charles Schurmann, secy.," and in decedent's presence deposited said check as a credit thereto, stating to the bankers that the account was a building and loan account, which they always supposed it to be. Schurmann thereafter, up to October 14, 1903, deposited sums and balances in his hands as secretary of each of said associations in said account (which covers many pages of the bank ledger) without separating the funds of one association from those of the other, or from other funds deposited by him. After June 4, aforesaid, he drew checks on said account in payment of the expenses of said associations, in the payment of warrants turned over to the treas-

urer as cash, and in payment of balances due from him in
sundry settlements with the treasurer.   Decedent was not
credited with the proceeds of said check, nor was Schur-
mann charged with the same upon any of the books of said
associations.   On June 5, 1894, decedent, as such treasurer,
had of the funds of the International Building & Loan
Association $18,854.78, and of those belonging to the In-
ternational Building & Loan Association No. 2, $4,861.91.

After June 4, 1894, and for some time prior thereto, the
secretary did not pay over at the end of each day to the
treasurer all money paid into the association, but from time
to time out of the money received he paid warrants drawn
on the treasurer, which warrants were afterward turned
over to the treasurer as cash, he receipting therefor.   The
secretary kept account of his receipts and of his payments,
treating warrants paid by him as aforesaid as money, kept
all the accounts of the associations, including an account
between the treasurer and the associations made up from
his payments to the treasurer and the reports of the latter.
He kept the books of the associations which were at all
proper times subject to the inspection of the board.   The
treasurer also kept an account in what is designated as
"Byram's ledger," in which the paid warrants received by
him were treated as cash.

The findings omit to state in direct terms whether the
associations had notice or knowledge of this manner of
conducting the affairs of said associations, but the circum-
stances are of such a nature as to preclude any possible
claim of want of notice thereof.   Indeed, it may be said
that the associations must have known that the treasurer,
absent on indefinite leave, was not receiving funds each
night or paying warrants in Indianapolis, as they were
issued, while the payment of their own salaries in this
manner to the board members conveyed definite informa-
tion thereof to them.

The rule of a corporation's action is found in its by-laws. The power to amend the by-laws of these associations was expressly vested in the board of directors thereof.

1. 3 Clark & Marshall, Priv. Corp., §641. The effect of a departure from the written rule, acquiesced in by the board of directors is tersely stated as follows: "When the power to make by-laws is vested in the stockholders or members, and they have made by-laws for the protection of the corporation, they can not be waived by the directors or other officers of the corporation. But the stockholders may permit the directors or other officers to act in disregard of such a by-law, or they may ratify their action, and in such a case there is a waiver of the by-law by the stockholders." 3 Clark & Marshall, Priv. Corp., §640.

Appellees' position is that the payment to Schurmann was a personal and purely private transaction between him and decedent in which they were not concerned.

2. The trial court evidently acted upon the theory that, unless the money so paid to Schurmann was in fact applied by Schurmann to the liquidation of association debts, there could be no credit given because of its payment by decedent, as indicated by the following finding: "But it is not shown herein that the proceeds of said $5,000 check were applied for the use of or benefit of either of said building associations." This negative finding is said to be opposed to the evidence, which is asserted to show that three-fourths of said sum was paid out within thirty days, and all but $540 within sixty days, charging the whole matter to the parent association; but it is not material in considering the effect of the findings, whether they are supported by evidence or not, since the conclusions of law must be based upon them as made. One who pays money to an agent authorized to receive it is entitled to his credit without tracing the fund through the hands of the agent and into those of his principal. Of course, without regard to authority of agent, money had and received may be recov-

ered, but payment having been once made to an authorized agent, the principal can not avoid its effect because of the delinquency of the agent, and much less because of the failure of the party paying to vindicate the subsequent conduct of the agent.

Schurmann was in effect the general manager of the associations. He had power to receive all moneys paid in. Had the $5,000 in question been paid by any one 3. else than the decedent, there could be no possible quibble as to the associations' being bound by his receipt of it. The change in method of paying orders required that sum of money to be placed at the disposition of the associations for disbursement by other officers than the treasurer. The findings show this to have been done, and, unless the right of the estate to credit is made uncertain by other findings, it must be taken as established. The money held by decedent was held by him as an official of the associations for them, and not independently. The character of the fund was known and recognized by Schurmann, who took and deposited it, not to his own account, but to the account of "Charles Schurmann, secy." thereby giving notice of the character in which he took and held it. *Bundy v. Town of Monticello* (1882), 84 Ind. 119; *National Bank v. Insurance Co.* (1881), 104 U. S. 54, 26 L. Ed. 693; *Bank of Northern Liberties v. Jones* (1862), 42 Pa. St. 536. The bank accepted the building associations' account which it continued to keep without change. The associations would have been entitled to check out the funds on hands had Schurmann ceased to act for them. *Carman v. President, etc., Bank of Baltimore* (1884), 61 Md. 467; *Gaffney's Estate* (1891), 146 Pa. St. 49, 23 Atl. 163. The money was received by virtue of the official position of Schurmann. *Tyler v. Old Post Bldg. Assn.* (1882), 87 Ind. 323, 325. The by-laws having been by custom and acquiescence so modified as that warrants were paid when issued by the secretary, it of necessity followed that it also

came within the purview of his duty to receive and hold association funds with which to make such payments. As against the clear-cut findings showing the receipt of association funds by a person authorized to act for them in such behalf, the negative finding above set out has neither weight nor relevancy.

It is stated that the transfer of funds was not "authorized" by the board of directors. The finding is that of a legal conclusion, and not effective for any purpose.

4. It is also stated that the payment of said sum was not "reported" to the board of directors. It being conceded that the secretary had power to receive the money for his principal, it must also be conceded that his failure to report the receipt thereof is immaterial.

It is also said in the findings that "it is not shown" that any officer other than Schurmann and decedent had notice of said transaction. It might with equal propriety

5. have been stated that it "is not shown" that they did not have such notice. There is no finding of notice or no notice, and the party who has the means of proof in his possession is not in a position where he can be much advantaged by the failure of his adversary to produce it. But in any event the fact of notice is immaterial when restricted to a detail of the general course of business not only known to but authorized by the associations themselves.

The twenty-second finding is evidently drawn in accordance with the theory that whatever credit appellant might be entitled to receive, growing out of the $5,000

6. transaction, would be as matter of set-off. The amount otherwise due from decedent to the associations is correctly stated. Construed in connection with the facts heretofore enumerated, and in view of the theory which to some extent prevailed during the trial, and treating the findings as a consistent whole, we are of the opinion

NOVEMBER TERM, 1905. 693

Indiana Trust Co. *v.* International, etc., Assn.—36 Ind. App. 685.

that there may be a final judgment based upon it which shall end the litigation according to the substantial rights of the parties concerned.

That decedent paid $5,000 to Schurmann for which the latter is responsible to some one is not a disputed fact. So far as he is concerned, it is a mere question of choosing a creditor. If the transaction was a personal one between him and decedent, the estate will have to recover from him upon an open account dated June 5, 1894, which it is reasonably apparent the estate may have some difficulty in doing. On the other hand, if Schurmann received this money as the agent of the association, and has not accounted for the same, or has appropriated or converted it to his own use, the character of action to which he becomes a probable defendant is of a vastly more persuasive nature. A judgment for appellees in this action will furnish a defense to him which otherwise seems to be lacking. *Bowen v. O'Hair* (1902), 29 Ind. App. 466; 2 Elliott, Evidence, §724. He was a leading witness for appellees in the trial. The estate should have credit for the amount of the payment made by decedent, leaving Schurmann and the associations to work out a satisfactory solution of their problems at their leisure.

What portion of this credit should be applied to the claims sued upon by the respective associations is a matter of more difficulty. It does not seem to be one in which they are particularly concerned, the argument and authorities upon the subject which have been made and presented being those of appellant exclusively.

There was no separation of funds when the check was made by decedent. There was no separation when checks were drawn by Schurmann. The language used in the indorsement upon the check by decedent was not designed, when considered in connection with the circumstances, to make such separation. It is a matter of impossibility

to make the apportionment at this time, except by the application of certain arbitrary and general rules which are supposed to produce approximately correct results. It seems to be settled that when a broker sells goods of both A and B to the payor, a general payment, if insufficient to discharge both debts, will be proportionately distributed between them in proportion to the amount contributed. *Favence* v. *Bennett* (1809), 11 East 36. Having distributed a joint fund for the benefit of two, it can not be unfair to charge them in proportion to their interests in the fund out of which payment was made.

The maxim "equality is equity," as applied to the facts, seems to justify a pro rata division of responsibility, according to the respective funds held for the association at the time payment was made.

The judgments will therefore be reversed, and the trial court instructed to restate its conclusions of law in accordance herewith.

No reference has heretofore been made to a question presented in No. 5,233 relative to the basis of the claim there.

8. It is shown by the corporate records that a loan to decedent was authorized by association No. 2, and that he thereafter credited himself with such amount as paid. We do not think that the failure to execute the note or mortgage prevents recovery.

Judgment reversed.