HELMS ET AL. *v.* THE AMERICAN SECURITY CO. OF INDIANA, INC.

[No. 27,236.   Filed October 11, 1939.]

2

*William L. Peck,* for appellants.

*Brown, Gemmell & Campbell,* and *Gifford & Appleton,* for appellee.

SHAKE, J.—This case calls for a construction of certain provisions of the Chattel Mortgage Act of 1935 (Acts 1935, ch. 147, p. 498, § 51-501 et seq. Burns' Ann. St. 1937 Pocket Supp., § 13227-1 et seq. Baldwin's Supp. 1935).

The facts out of which the controversy arose are not substantially in dispute. They may be summarized as follows: A. H. Hinton was engaged in the automobile sales business under the trade name of Hinton Motor Sales in the city of Tipton, Ind. In furtherance of his business Hinton maintained a salesroom where motor cars were displayed to attract retail purchasers. Among the cars so exhibited was a certain Chevrolet automobile. The appellant Ruby Helms had negotiations for the purchase of this car and it had been demonstrated for her by one of Hinton's agents. Thereafter Hinton

mortgaged this car to the appellee, The American Security Company of Indiana, Inc., for $395. The mortgage was duly recorded on December 22, 1936. On the following day Miss Helms purchased the automobile from Hinton for $550, giving in exchange therefor another car at an agreed price of $160, and executing a note and conditional sales contract for the balance of $390, with interest and finance charges. Hinton immediately sold and assigned the note and conditional sales contract, without recourse, to the appellant Lincoln Loan Company for the principal amount thereof in cash. Neither appellant knew at the time of the existence of the appellee's mortgage.

Appellee's mortgage provided that the mortgagor might retain possession of said automobile but should not use it in any way except to display it in his salesroom. The mortgage also contained the following specific clause:

> "That the mortgagor may sell each of said automobiles (the mortgage covering other vehicles as well as the one herein involved) in the regular course of his retail business at its usual retail price for cash providing the proceeds of such sale are received and held by the mortgagor as trustee for the mortgagee and applied upon the mortgage debt hereby secured by delivery of such proceeds to the mortgagee. In the event the mortgagor sells any one or more of said automobiles on other terms than entirely for cash, the mortgagee may elect to accept the proceeds of such sale in lieu of the lien of this mortgage upon such automobile or automobiles so sold. Until actual delivery to the mortgagee of the proceeds of any sale and its acceptance thereof as aforesaid, if such sale is not for cash, the lien of this mortgage upon such automobile or automobiles so sold by the mortgagor, shall continue in full force and effect."

Upon default of its mortgage the appellee brought an action against the appellants to replevin the automobile.

Both appellants filed answers in general denial and, under our practice, this was sufficient to authorize all the defenses upon which they rely. Waiver, estoppel, and fraud may be proved under the general denial in replevin actions. *Benjamin* v. *The McElwaine-Richards Company et al.* (1894), 10 Ind. App. 76, 37 N. E. 362; *Jackson* v. *Morgan* (1906), 167 Ind. 528, 78 N. E. 633; *Indiana, etc., Securities Co.* v. *Whisman* (1926), 85 Ind. App. 109, 138 N. E. 512. The trial resulted in a finding and judgment in favor of the appellee. This appeal is from the denial of appellants' separate motions for a new trial, in each of which it was charged that the decision of the court was not sustained by sufficient evidence and was contrary to law.

To sustain the judgment appellee relies upon the provisions of sections 1, 2, 4, and 6 of the Chattel Mortgage Act of 1935. Without quoting said sections, it is sufficient to observe that they purport to protect a mortgagee of chattels against all subsequent purchasers thereof unless the proceeds of such sales are actually applied upon the mortgage debt or subjected to the lien thereof. If this construction is to prevail, the act of 1935 is a radical departure from the policy of this state as it uniformly existed for nearly a century. Under the decisions of our courts prior to the act of 1935, chattel mortgages on goods or merchandise were held to be invalid against innocent purchasers when the mortgagors were permitted to have possession with the power of sale in the ordinary course of business. The proceeds of such sales were regarded as applied and the debts extinguished, although they were not, in fact, paid over. *Indiana, etc., Securities Co.* v. *Whisman, supra; Vermillion* v. *First Nat. Bank* (1915), 59 Ind. App. 35, 105 N. E. 530, 108 N. E. 370.

Appellee's contention is clearly set forth in the following quotation from its brief:

"By that act (of 1935), the 'caveat emptor' rule was substituted for the 'innocent purchaser' rule long recognized by the common law and affirmed by our courts. Thenceforth, customers who purchase previously mortgaged personal property which is displayed and offered for sale at retail must buy at their peril, provided the mortgage is executed and recorded as required by said act. The 'caveat emptor' rule now obtains. That rule means 'Let the purchaser beware.'

"* * * It is argued by the appellants that the Chattel Mortgage Act is unjust and oppressive, that it prejudices legitimate enterprise and creates an absurd situation in the law. The courts have nothing to say or do about such matters. No principle is better settled than that, where a valid statute creates new rights, or authorizes particular acts to be done, the courts will not consider the legislative policy, the propriety thereof, or the legislative motive in enacting such statute."

We can not agree with the appellee with respect to the functions of this court. It would lead to serious and evil consequences if courts should be powerless to say or do anything if the legislative branch of the government should assume to enact unjust and oppressive laws, calculated to prejudice legitimate enterprise and create absurd situations. To meet such situations, if and when they arise, there have been established rules of statutory construction which may be applied to make statutes conform to the accepted principles of order and justice. It has accordingly been held that statutes should be construed in the most beneficial way the language will permit to prevent absurdity, hardship, or injustice and to favor public convenience and oppose all prejudice of public interests. *Gaebler* v. *Town of Rockville* (1933), 96 Ind. App. 715, 185 N. E. 318. All statutes are to be construed as

far as possible in favor of equality of rights and against restrictions of human liberty and claims for special privileges. *Lee* v. *Burns* (1932), 94 Ind. App. 676, 182 N. E. 277. The common law of the land is based upon human experience in the unceasing effort of an enlightened people to ascertain what is right and just between men. *Kansas* v. *Colorado* (1907), 206 U. S. 46, 27 S. Ct. 655, 51 L. Ed. 956. Statutes in derogation of the common law are therefore to be strictly construed and, in cases of doubt, that construction will be given which accords with the common law. *State* v. *Lowry* and *Lewis* v. *State* (1906), 166 Ind. 372, 77 N. E. 728, 4 L. R. A. (N. S.) 528, 9 Ann. Cas. 350.

Prior to the enactment of the act of 1935 the statute of this state with respect to the recordation of chattel mortgages, which had been in effect since 1852, merely provided that no such mortgage should be valid against any other persons than the parties thereto, where the goods were not delivered to the mortgagee and retained by him, unless the mortgage was recorded within 10 days from its execution. (1 R. S. 1852, ch. 42, § 10, p. 299; Acts 1897, ch. 160, § 1, p. 240; § 33-301 Burns' 1933.) It is to be noted that the act of 1852 stated negatively, or by way of prohibition, the consequences of a failure to record a mortgage where possession of the mortgaged chattels was not delivered. Inferentially, when such a mortgage was recorded in compliance with the act of 1852, it was good and valid against all persons. Such was the statute law of this state at the time this court applied the common law rule and it therefore existed quite independently of the statute in force at the time. If it has been abrogated it must be because the common law has been abrogated by statute, rather than on account of a change of legislative policy.

The act of 1935 undertakes to express affirmatively and positively, rather than negatively and by way of prohibition, the rights of a mortgagee of chattels when the instrument is duly recorded in compliance with the terms of the statute. It declares that when such a mortgage is so recorded it is valid against all persons. In this respect it is no stronger and goes no further than did the act of 1852. That which must necessarily be implied from the language used in the statute of 1852 is no less effectual or controlling than that which is expressly declared in the act of 1935.

The most troublesome language in the act of 1935 is found in section 6 thereof (§ 51-506 Burns' 1937 Pocket Supp.). It is there provided that a chattel mortgage "executed under and pursuant to this act may validly provide that the mortgagor shall, as the agent or trustee for the mortgagee or lender or owner or holder of the secured debt, have the right to sell or exchange any of the mortgaged chattels under the conditions stated in said mortgage, *if the proceeds of such sale or exchange are applied upon the mortgage debt or subjected to the lien of said mortgage.*" (Our italics.) It is a fundamental principle of our common law that one who pays money to an agent or trustee authorized to receive it is entitled to his credit without tracing the fund through the hands of the agent or trustee into those of his principal. *Indiana Trust Co.* v *International, etc., Assn.* (1905), 36 Ind. App. 685, 74 N. E. 633. This rule has long been embodied in a statute of this state which provides:

"No person who shall, in good faith, pay money to a trustee authorized to receive the same, shall be responsible for the proper application of such money; nor shall any right or title derived by him from such trustee in consideration of such payment

be called in question in consequence of misapplication by the trustee of such money." 1 R. S. 1852, ch. 113, § 9, p. 501; § 56-616 Burns' 1933.

The provision of the act of 1935 quoted above seems to constitute the mortgagor as the agent of the mortgagee for the purpose of receiving payment and the agent of the purchaser to see that such payment when made reaches the mortgagee. If the burden rests upon the purchaser to see that the agent accounts to his principal, the authority of the agent to receive such payment is but an idle gesture and may as well not have been granted in the first place. And if a principal may renounce the authority of his agent to receive money after payment to him there is, in effect, no agency at all.

Section 6 of the Chattel Mortgage Act further undertakes to say that (§ 51-506 Burns' 1937 Pocket Supp.) :

"Any such sales or exchange (of mortgaged chattels) may be made in accordance with the provisions in the mortgage without notice to or consent of any person claiming any right in or to the mortgaged property, and such property received in exchange shall be as validly covered by the mortgage as the original property."

It certainly could not have been the intent of the Legislature that the property sold and the property received in exchange therefor should both be covered by the lien of the existing mortgage.

What we have said is sufficient to indicate several things: (1) that the terms and provisions of the act of 1935 are most indefinite, uncertain, and ambiguous; (2) that the construction urged upon us by the appellee would do serious violence to the common law of this state and to independent statutory enactments not specifically repealed; and (3) that such construction would be manifestly unjust, inequitable, and oppressive since

no one could safely buy anything whatever from a retail establishment without first making a search of the county recorder's office to make certain that it was not encumbered with a chattel mortgage, or by seeing that the purchase price was paid to the mortgagee. How the casual purchaser of a small article sold in a retail store could possibly make sure that the price paid therefor ever reached the hands of the mortgagee has not been suggested.

Under the circumstances, the responsibility resting upon this court appears clear. We are confronted with the duty of engrafting upon the statute an exception to remove its ambiguities and avoid its absurd and unjust consequences. For this there is ample authority. *Marion Twp.* v. *Howard* (1925), 196 Ind. 167, 147 N. E. 619. We can not say that it plainly appears from the act under consideration, either from the express language used or by way of necessary implication, that the Legislature intended to abrogate the common law rule for the protection of innocent purchasers of mortgaged goods where the mortgagee suffers them to remain in the possession of the mortgagor and to be offered for sale in the ordinary course of trade.

The cause is reversed, with directions to sustain appellants' separate motions for a new trial, and for further proceedings not inconsistent with this opinion.