In the Matter of ED HUGHES FURNITURE COMPANY, Inc., Bankrupt; H. H. Woodsmall Agency, Inc., Plaintiff-Appellant,

v.

B. Howard CAUGHRAN, Trustee in Bankruptcy, Defendant-Appellee.

No. 11165.

United States Court of Appeals, Seventh Circuit.

Feb. 3, 1955.

Edward B. Raub, Jr., Indianapolis, Ind., Carl T. Reis, Indianapolis, Ind., White, Raub, Craig & Forrey, Indianapolis, Ind., of counsel, for appellant.

Frank C. Olive, Murray E. Dulberger, Indianapolis, Ind., Dulberger, Talesnick, Claycombe & Bagal, Olive, Knox & O'Hara, Indianapolis, Ind., John H. O'Hara, Indianapolis, Ind., of counsel, for appellee.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

Ed Hughes Furniture Company, Inc., became a bankrupt in October, 1952. Plaintiff, H. H. Woodsmall Agency, Inc., filed its proof of secured claim on November 21, 1952. Thereafter, the Trustee in Bankruptcy filed his petition to disallow the claim as secured, which the Referee granted on October 1, 1953. Upon review, the District Court sustained the order. Thereupon, this appeal was prosecuted.

On February 8, 1952, the bankrupt was indebted to plaintiff for insurance premiums upon its stock of merchandise, in the sum of $2635.30. On that date, plaintiff loaned the bankrupt $15,000.00, taking therefor the debtor's promissory note, deducting from the amount of the loan the sum of $2635.30 in full payment of its then due insurance premiums and paying the remainder to the bankrupt.

The note provided for monthly payments of $1,000.00, and acceleration of maturity in case of failure to pay any installment. To secure it, the bankrupt, simultaneously, executed a chattel mortgage upon all merchandise in its place of business at 317 East Washington Street, Indianapolis, Indiana, containing this provision: "said mortgagor agrees that in the event that there are any removals from said stock by reason of sale, same will be replaced with like or comparable merchandise so that said value shall at all times be maintained at Thirty five thousand Dollars ($35,-000.00) during the term of this agreement." It included no other provision defining the duties, rights and privileges of the mortgagor with respect to the proceeds of sale of the merchandise.

The balance of the loan remaining after deducting the insurance premiums was deposited in the bank account of the bankrupt, as were proceeds from sales of merchandise from time to time thereafter. Out of the funds received on the note, the bankrupt paid the expenses of normal operation of its business, certain creditors and some installments on the purchase price of the

business, which it had not yet fully paid for.

In July, 1952, plaintiff, claiming default on the part of the bankrupt, started foreclosure. On August 1, the two parties entered into an agreement providing that the suit remain in abeyance, and that the bankrupt make H. H. Woodsmall, individually, as escrow agent, certain payments. This it did, and these were applied on the mortgage, so that at the time of bankruptcy the debtor was indebted to plaintiff in the sum of $7,000.00.

After hearing the evidence, the Referee found, *inter alia*, that the property covered by the mortgage was never "tagged" as to liens; that the bankrupt owned certain other merchandise stored in warehouses; that the proceeds of sales of merchandise purporting to be covered by the chattel mortgage, from February, 1952 to October 21, 1952, were used to pay operating expenses, including salary, and general indebtedness of the bankrupt; that there was no agreement between the mortgagor and mortgagee that the proceeds of sale of the property were to be "applied upon the mortgage debt", or "subjected to the lien" thereof, or "used solely for the purpose" of paying the expenses of processing, marketing, or otherwise rendering merchantable or salable the remaining property purporting to be covered by the mortgage; that after February 8, 1952, the bankrupt received proceeds from the sale of mortgaged property in sums in excess of the amount of the mortgage; that, at the time of the filing of the petition in bankruptcy, the bankrupt had as part of its inventory of salable merchandise some of its merchandise which was on hand February 1952, but that it was not possible to determine the amount and value thereof. The Referee concluded, as a matter of law, that plaintiff was not entitled to a secured claim, and filed a memorandum as to his conception of the controlling principles of the law, all of which was approved by the District Judge on review.

■ The validity of the chattel mortgage as against the creditors and the Trustee in Bankruptcy, who stands in the shoes of a judgment creditor armed with an execution, is to be determined from the Indiana Statutes. Section 5 of the Chattel Mortgage Act, Section 51–505, Burns' Indiana Statutes, provides that any mortgage may validly include replacements of mortgaged property; Section 6, Section 51–506, Burns' Indiana Statutes that a mortgage may validly provide that the mortgagor shall have the right to sell any of the mortgaged chattels *"under the conditions stated in said mortgage"*, if the proceeds are applied upon the mortgage debt or subjected to the lien of the mortgage. A further provision is that the mortgage will be valid if the proceeds are used solely for the purpose of paying for services of cultivating, harvesting, preparing for market, processing, marketing or otherwise preserving or rendering merchantable or salable the remaining property covered by the said mortgage. This last provision, however, we think, has no relevance to the issues before us.

■ This statute was passed in 1935. At an early date the Supreme Court had held, in Mobley v. Letts, 61 Ind. 11, that an arrangement whereby the mortgagor was allowed to remain in possession of a mortgaged stock of goods with power to sell the same, was presumed to be fraudulent if it lacked provision for the proper application of the proceeds of sale. The Indiana Legislature later amended the statute, and, accordingly, the earlier decision was overruled in McFadden v. Fritz, 90 Ind. 590, in which the court held that fraudulent intent cannot be presumed, but must be proved as a fact. In other words, the Indiana courts have not explicitly held any such mortgage valid but have decided that, prior to the amendment of 1935, in order to invalidate an instrument, the Fraudulent Conveyance Act, Burns' Ann.St. § 33–409, required proof that the transaction was founded in fraud. The amendment of 1935 added

the specific provisions we have mentioned. Whether it changed substantially the law existing prior thereto it seems unnecessary to decide. At all events it would seem clear that, in view of the express provisions of the statute which had not theretofore appeared in the Indiana laws, the amendment reflected a legislative intent to safeguard the dangers inherent in chattel mortgages upon stocks of merchandise by providing certain restrictions and limitations. At any rate, in In re Turley, 7 Cir., 92 F.2d 944, we held that, under the prior statute, in the absence of fraud, such a mortgage was valid. However, after commenting that it had been consistently held that in Indiana a mortgage containing an after-acquired property clause which permits the mortgagor to remain in possession and sell chattels in the course of business is not necessarily void, Judge Major added, 92 F.2d at page 946: "If an agreement exists, however, by which the mortgagor can sell the goods and *divert the proceeds from the business* or that the mortgagor did so with the knowledge of the mortgagee, then no valid lien attaches to after-acquired property." (Citing Indiana cases.) (Emphasis supplied.) Under this holding, then, we have decided that, before the amendment, if there was an agreement by which the mortgagor could sell the goods and divert the proceeds from the mortgagee indiscriminately, no lien would attach to the after-acquired property. In Helms v. American Security Co. of Indiana, 216 Ind. 1, 22 N.E.2d 822, the 1935 statute was involved, but that case furnishes little light on the question before us, as the holding there was that such a mortgage was void as against an innocent purchaser from the mortgagor.

The Referee, in his memorandum, said that he was dealing with a chattel mortgage on a shifting stock of merchandise, where the mortgagor retained possession and had the right to sell and use the proceeds of sale; that such a transfer is ordinarily held invalid, citing In re Baumgartner, 7 Cir., 55 F.2d 1041, and Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991; that, under the Indiana statute as amended, such a mortgage is valid provided the proceeds of the sale are applied upon the mortgage debt, or are subjected to the lien of the mortgage; that in the present case the mortgagor agreed that if there were any removals of merchandise, the same should be replaced with like or comparable merchandise, but that there was no provision in the instrument controlling disposition of the proceeds of sale. Consequently, he concluded that, under the mortgage, the bankrupt had the right to dispose of the goods and to apply the proceeds thereof to its own use without restriction, and that this was beyond the sanctions of the Indiana statute. He concluded, further, that, inasmuch as the mortgage did not conform to the requirements of Section 51–506 of the Indiana Act of 1935, it was voidable at the suit of the Trustee in Bankruptcy

After careful examination of the record and the Indiana Statute and authorities, although there is no Indiana decision directly in point upon the proper interpretation of the statute involved, we are of the opinion that the Referee and the Court properly decided the question presented. The amended statute explicitly limits the right of a mortgagee to a valid mortgage upon a stock of merchandise to instances where the mortgagor, by "the conditions stated in said mortgage" is obligated to apply the proceeds of sale upon the mortgage debt, or to subject the same to the lien of the mortgage. The mortgagee here has not brought itself within the mandate of this statute by prescribing the obligations of the mortgagor in "the conditions" of the mortgage. Rather, it has permitted the bankrupt to sell merchandise without having the proceeds applied upon the mortgage or without having provided that the proceeds of the sale be subjected to the mortgage. It made no such provision in its mortgage. From the cash it received, the bankrupt has paid part of the purchase price it owed to other persons; it has paid creditors;

it has paid salaries and other running expenses of the business. The mortgage does not conform to the requirements of the statute.

In view of our conclusions, it is unnecessary to discuss other points.

The judgment is

Affirmed.