J. W. KEMMISH, Appellant, v. GEORGE W. McCOID, Appellee.

**HIGHWAYS: Law of Road—Entering Highway From Private Driveway.** The driver of an automobile, in driving out of a private driveway into a public highway, does not, until he has entered upon the public highway, have equal right with another driver already properly upon the public highway, and must see such other driver if in plain view, and distracting circumstances do not prevent seeing. Whether a driver so entering upon a public highway may, *after so seeing,* reasonably proceed, or should wait until the driver already on the public highway has passed, may be a question of fact or law. In present case, *held* that one driving upon a public highway from a private driveway was guilty of negligence *per se,* even though she testified that she looked for and did not see a driver who *unquestionably* was within 70 feet of her and in plain view.

*Appeal from Harrison District Court.*—GEORGE W. CULLISON, Judge.

DECEMBER 15, 1921.

REHEARING DENIED MAY 15, 1922.

ACTION to recover damages to plaintiff's automobile, caused by a collision with defendant's automobile. At the close of plaintiff's testimony, the court directed a verdict for the defendant, and plaintiff appeals.—*Affirmed.*

*Robertson & Havens,* for appellant.

*Bolter & Murray* and *John P. Organ,* for appellee.

STEVENS, J.—The collision complained of occurred at or very near the intersection of a private driveway on the west side of a north and south public highway, about one-half mile south of Logan, with said highway. The public highway was 60 feet, and the traveled portion about 40 feet in width. The ground was practically level in both directions for a considerable distance. The private driveway was on a level with the traveled portion of the road, and the view of one coming into the highway from the private driveway was wholly unobstructed for several hundred feet to the north, possibly for 60 rods. Likewise, the view of the driveway from the highway was unobstructed. There was a slight decline to the north from a point at least 125 feet north of the driveway, but it was not sufficient to interfere with the view from the driveway for several hundred feet north from its intersection with the road. The collision occurred about 5:30 P. M., August 1, 1919.

Plaintiff's automobile, which was being driven by his wife, was a large Marmon touring car. The defendant was driving a Franklin car. Mrs. Kemmish testified that, when she and her three children got into the Marmon car, it was standing in the dooryard a short distance north of the driveway, and about 60 or 65 feet west of the west side of the highway; that she started the car in low, and had not shifted the gears when the collision occurred; that she was traveling about six miles per hour; that she looked north to see if a car was approaching from that direc-

tion, just as she started toward the driveway and again immediately before entering the highway; that she did not see the defendant's car when she looked, nor until the collision took place. Her sister, whom she had been visiting, and who was standing in the dooryard of her home north of the driveway, testified that she first saw defendant's car approaching from the north at 30 miles per hour, when it was about 20 feet north of the driveway; that she saw her sister turning south, and called to her; and that the collision occurred immediately thereafter, without her sister's noticing her warning. There was a galvanized iron culvert in the highway about twelve feet from the property line and at the west edge of the traveled way, which was covered so that it in no wise interfered with the movement of plaintiff's automobile. Mrs. Kemmish and her sister agree substantially in their testimony that the right hind wheel of plaintiff's automobile had passed over the culvert and was about four feet east of it at the time of the collision; and that defendant's automobile passed over the left front fender of plaintiff's car and ran in a southeasterly direction for 150 or 160 feet to the east side of the road before it came to a stop. All of the witnesses agree that the driveway was on a level with the highway, and that the traveled portion of the road was in good condition, and was about 40 feet in width. The exact length of plaintiff's car is not shown, but the wheel base from hub to hub was 136 inches. Mrs. Larson, the sister of Mrs. Kemmish whom she had been visiting, and her husband differ somewhat as to the course of plaintiff's car after it was started, and until it reached the highway. Mrs. Larson testified that her sister drove it southeast into the driveway and then east; whereas her husband, who was not present, testified that the tracks indicated that she had driven to the southeast and into the highway without entering the driveway at all. A plat prepared by him and offered in evidence so shows. Mrs. Kemmish admitted that she did not sound the horn or give any warning of her approach toward and into the highway. She also testified that she turned to the right and toward the west side of the traveled portion of the highway as sharply and rapidly as she could, and other witnesses testified that the car was a few feet from the west side,

facing almost directly south, a few minutes later, when they arrived on the scene. Plaintiff's three children, one of whom was about twelve years of age, occupied the rear seat of the car. The exact position of plaintiff's automobile at the time of the collision is open to some speculation, but the physical facts leave no doubt that the radiator extended out into the highway in a somewhat southeasterly direction. Photographs introduced in evidence show that plaintiff's car was struck immediately in front of the rear seat. The running board and front fender were damaged and the frame sprung so that it was necessary to send it to the factory to be repaired. It is quite clear that defendant's car did not strike plaintiff's car at right angles.

The testimony also showed that the defendant, as soon as his car came to a standstill, went back and inquired of Mrs. Kemmish whose car it was, and during the conversation said he was showing the farm across the road, which he had formerly owned, to his companions, and did not see plaintiff's automobile before the collision.

At the close of plaintiff's testimony, the court directed the jury to return a verdict for the defendant, upon the ground that the evidence showed conclusively that Mrs. Kemmish was guilty of contributory negligence. This is the vital and controlling question in the case. The argument on both sides proceeds on the assumption that the defendant was negligent, and that plaintiff may be charged with the contributory negligence, if any, of his wife.

Chapter 2-B, Title VIII, of the Code Supplement, 1913, was repealed by Chapter 275, Acts of the Thirty-eighth General Assembly; but Chapter 275 did not go into effect until December 1, 1919, which was after the accident in question. Section 1571-m18 of the Code Supplement makes it the duty of the driver of a motor vehicle meeting another traveling in the opposite direction to turn to the right; and of one overtaking or passing another to drive to the left; of one before stopping, turning, or changing the course of the car, to ascertain whether there is sufficient space to make the movement in safety, and to give a visible or audible signal to the crossing officer, if any, or to the drivers of vehicles following, of such intention, by rais-

ing the hand and indicating the direction in which he proposes to turn; of one passing from one street or highway into another, and turning to the right, to turn as near the right-hand corner as practicable, and in turning to the left from one highway to another, to pass to the right of and beyond the center, before turning; of one crossing from one side of the street to the opposite, to turn to the left, so as to approach in the direction in which vehicles on the street or highway are moving.

In addition to these provisions, Chapter 275, supra, provides that:

"Sec. 26. (i)   Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way. * * *

"(n)   The driver of any vehicle driven or propelled upon the public highways shall, when overtaken by a faster moving vehicle proceeding in the same direction, upon a signal, either by the sounding of a bell, horn or other signaling device, given by the driver of the overtaking vehicle, cause his vehicle to be driven to the right of the center of the traveled way if he can do so with safety and remain to the right of the center of such traveled way until the overtaking vehicle shall have safely passed."

A failure to do this is made a misdemeanor.  It thus appears that the legislature has undertaken to provide for the greatest possible safety of travelers upon the public highway, and in the enactment of these provisions of the statute, has sought to anticipate every probable situation or condition that is likely to arise or exist in the use and occupation of public highways by travelers.  These statutes do not, however, abrogate well established and salutary principles of the common law.  The duty of the driver of a motor vehicle at intersections and all points on the highway where a collision is likely to occur, is made as specific and certain as the legislature could well have made it.  The situation of one about to enter a public highway from a private driveway is somewhat analogous to that of the driver of an automobile approaching a street intersection, or about to cross a street.  He is bound to know that the highway

is extensively used for travel, and that rapidly moving, high-powered motor vehicles are common thereon.

Plaintiff's wife was bound to know that automobiles traveling south were required, in passing vehicles going in the opposite direction, to turn to the right; and that, while the driver of such vehicle otherwise may use any portion of the highway desired, nevertheless, in the interest of safety, on a perfectly level and well kept highway, he would probably occupy the side thereof providing the greater safety. She testified that she looked to the north immediately after starting the car, and again before entering the highway. All of the witnesses agree that her view to the north was wholly unobstructed; that there was nothing to prevent her from seeing defendant's automobile approaching, at the time she looked immediately before leaving the driveway; and, assuming that defendant's automobile was traveling five times as fast as hers, it could not have been more than 60 or 70 feet north of the intersection when she last looked in that direction. It was within the clear line of her vision, and it was her duty to look before passing out of the driveway. The top of plaintiff's automobile was up, but the side curtains were off. The duty to look implied the duty to see what was in plain sight, unless some reasonable explanation is shown. *Holderman v. Witmer*, 166 Iowa 406, 407. Mrs. Kemmish does not claim that her attention was distracted in any way, and the only explanation she offered of her failure to see was that the automobile was not there. The physical facts are such as to show conclusively that in this she was mistaken. The center of plaintiff's car could not have been more than ten or a dozen feet east of the west side of the traveled portion of the highway at the time of the collision. All of the testimony shows that the rear right wheel was not to exceed 16 feet from the property line. It is too apparent for controversy that the car had traveled but a short distance, at most, south of the center of the driveway when the accident occurred. The time, therefore, that elapsed after she entered the highway and until the collision was not more than a few seconds. The record conclusively shows that she had just emerged from the driveway and was in the act

of turning the car to the southeast for the purpose of driving south on the west side of the highway when it was struck.

Defendant's car was lawfully upon the west side of the highway, and it was the duty of the defendant, who was operating it, to keep a careful lookout ahead for other vehicles traveling in the same direction, and, upon approaching such vehicle, if he desired to pass the same, to sound a signal and to turn to the left. It was clearly the duty of Mrs. Kemmish, before entering the highway, to look to the north for approaching vehicles, and not to proceed into the highway if she saw one coming, unless, as a reasonably prudent and cautious person, she believed, and had a right to believe, that she could pass in front thereof in safety. If the approaching vehicle was traveling upon the west side of the traveled portion of the highway at such a rate of speed and so close to the intersection that the driver thereof would not, in the exercise of his statutory and common-law duty, have sufficient time to turn to the left and avoid a collision, then it was her duty to wait until the intersection was passed. If, on the other hand, she had looked and had seen a car approaching, and as a reasonably prudent and cautious person believed that she could pass safely into the highway, giving defendant such time and notice as would enable him, in the exercise of his duty, to turn to the left and avoid a collision, she would have a right to do so. She was not required to exercise an infallible judgment, but to use such care as a reasonably cautious and prudent person would exercise under the circumstances. Mrs. Kemmish does not claim, however, that she saw the approach of defendant from the north, nor that she believed that she had time to safely enter the highway and proceed southward thereon in the usual way of travel on the highway before defendant would reach the intersection, but claims that she looked, and saw nothing. She is either mistaken in her belief that she looked immediately before going upon the highway, or else she failed to see the car, which must have been very close and in plain sight. In either case, she was negligent. She did not sound the horn or give other signal or warning of her presence and purpose to go upon the highway. Plaintiff's automobile was practically new, in good condition, and easy to operate. It

could, according to the testimony, have been stopped within six feet. The attention of the driver was not distracted, and the car was not moving at a greater speed than six miles per hour. The fact that the front end of defendant's automobile struck plaintiff's very nearly at the center, when the relative speed of the two cars is considered, shows that defendant's car must have been within 60 or 70 feet of the intersection at the time Mrs. Kemmish drove into the highway. The physical facts refute her claim that she looked to the north and that the defendant's automobile was not in sight.

The driver of a motor vehicle may not go upon the highway in front of another motor vehicle traveling at a rapid rate of speed, and rely for safety upon the driver of the approaching car to pass to the left in time to prevent a collision, or to operate it with due care and without negligence. *Judd v. Webster,* (Cal. App.) 195 Pac. 929. It is the duty of such driver to exercise reasonable care, and, unless it is reasonably manifest to a person in the exercise thereof, that the highway may be entered with safety to the drivers of both cars, to wait until the one already upon the highway has passed. The driver of plaintiff's car did not, upon the occasion in question, observe these rules. She either is mistaken as to what she did, or she failed to see that which was in plain sight when she looked. Her negligence cannot be excused upon the ground that she had an equal right with the defendant to the use of the highway, for she was just entering same; nor is the plaintiff relieved from her contributory negligence by the negligence of the defendant. The motion to direct a verdict for the defendant was properly sustained.—*Affirmed.*

EVANS, C. J., ARTHUR and FAVILLE, JJ., concur.