## MATTES *v.* BRUGGNER.

[No. 12,999. Filed December 22, 1927. Rehearing denied March 13, 1928. Transfer denied October 9, 1928.]

*Parker, Crabill, Crumpacker & May, State & Harman* and *Fenton, Steers, Beasley & Klee,* for appellant.

*Eli F. Seebirt, Lenn J. Oare* and *George W. Omacht,* for appellee.

McMahan, J.—Action by appellee against appellant for damages on account of personal injuries suffered by appellee as the result of a collision between an auto truck in which he was riding and an automobile operated by appellant.

Sample street in the city of South Bend is paved to a width of sixty feet between curbs. There is a four-foot sidewalk on each side, extending from the curb to the

street line. It runs east and west and passes between plant No. 1 and plant No. 2 of the Studebaker Corporation. Three railroad tracks cross Sample street at right angles between plants No. 1 and No. 2. There is a private driveway about twenty-five feet wide immediately west of the west railroad track which intersects with Sample street from the south, and which is referred to by some of the witnesses as the "Colmer road." The accident happened in the morning, at a time when appellee and another employee of the Edward's Iron Works were traveling north on the private roadway, in the course of their employment, in a Ford truck belonging to their employer. This other employee, under whom appellee was working, was a gang boss and was driving the truck. There was a gate on both the north and the south sides of Sample street across the railroad tracks and across the private roadway. As appellee and the person with whom he was riding came to Sample street from the south, the driver stopped the truck just before he started to cross the street. At this time, a train of freight cars was being pushed north on the east railroad track. Appellant was coming from the east on Sample street on his way to a point west of the place of the collision. As the train approached the street crossing, a watchman stationed west of the roadway and south of the fence on the south side of Sample street, crossed the roadway in front of the Ford truck and walked toward the center of the street and held up a "Stop" sign, indicating to travelers on the street the approach of a train. Appellant, at this time, was approaching the railroad from the east, and, without stopping or checking the speed of his automobile, proceeded across the railroad in front of the train and collided with the truck in which appellee was riding. The collision took place north of the center of the street, the front end of appellant's automobile striking the right rear end of the Ford truck.

The evidence is conflicting as to the distance appellant's car traveled after the collision and before it came to a stop, appellant saying it went about ten feet while other witnesses said it went about fifty feet. The truck was struck with sufficient force so that, after the collision, it headed southeast instead of north, the latter being the direction in which it was traveling at the time of the collision. The weather was cold and the pavement icy. As a result of the collision, appellee's right eye was permanently injured so that there is a vertical deviation of his eyes and, in order to prevent his seeing double, he is compelled to use a blind over the injured eye. This defect cannot be corrected with glasses, although it might be remedied by an operation. An operation, however, would be a delicate undertaking and one for a specialist. An eye specialist, who testified as a witness for appellant, said he could perform the operation, but would not want to do it, as appellee should have the benefit of a more experienced operator.

A switchman, who was riding on the forward end of the train of freight cars which was being pushed to the north and across the street, testified that, when he was about fifty feet from the street, he saw appellant coming from the east about 150 feet from the railroad at a speed of from thirty to thirty-five miles an hour; that, when the car on which he was riding and which was moving from eight to ten miles an hour was about one-third of the way across the street, appellant crossed the railroad tracks in front of the freight car on which the witness was riding, and that he yelled at appellant.

Appellee testified, in part, as follows: "Worked for Edwards Iron Works nearly two years. On February 20, 1926, Charles Ching and I went to Studebaker Plant No. 1, to pick up some stone drills. We went in a Ford truck that belonged to the Edwards Iron Works, and Ching was driving. Didn't find the tools at Plant No. 1,

and went to Plant No. 2, and then were returning to Plant No. 1, when I was injured. We drove along the railroad track on the Colmer road, going north, toward Sample street. When we reached Sample street, Ching stopped the truck six or seven feet from the south line of the street. There was an engine pushing some box cars north, going not more than ten to fifteen miles per hour. When we stopped south of Sample street, the train was ten to fifteen feet south of the south line of the street. The engine whistled and the bell was ringing. The flagman passed across the Colmer road in front of us, fifteen or twenty feet ahead of us, as he walked to Sample street. He went out near the center of the street and held up his "Stop" sign. We proceeded to cross the street. I was sitting on the right side of the seat of the Ford auto, and the first I saw of the automobile coming from the east which later struck us, was when it was five or six feet from the side of the Ford truck. It was just crossing the railroad track. I could not see how fast his car was coming. It struck our car and my eye was injured. When I first saw the auto coming from the east, we were nearly across its path. I did not see it until it was just about to strike us. The watchman was east and south of us at the time of the accident. The sidewalk on the south side of Sample street is four feet wide; that is, it is about four feet from the south gate to the curb, and the pavement is about fifty feet or possibly more in width. We were going together to get the tools and take them to my men. Mr. Ching told me to get the tools and take them to the men."

Ruth Burkhart, who was riding in the automobile with appellant at the time of the collision, testified that she saw no train coming, saw no watchman holding up a sign, and heard no one call to appellant. Did not see train until after the collision. As they crossed over the railroad tracks, she saw the truck in which appellee was

riding crossing the street in front of them; that she told appellant to "look out," that the truck was not stopping; that appellant applied the brakes, but that it was an icy morning and the car slid and struck the rear end of the car in which appellee was riding.

Appellant testified that, as he approached the railroad tracks, he heard an engine whistle but saw no train; when fifty or sixty feet from the track, saw the flagman coming out toward the center of the street carrying his stop signal down at his side; as he reached the track, he saw the truck coming into the street and the lady riding with him said it was not going to stop; he put on the brakes, but the car kept on going and he struck the rear end of the truck; threw the truck off to the right and his car went about ten feet when it stopped. Other witnesses testified, but we do not deem it necessary to set out their testimony. A trial resulted in a verdict and judgment for appellee in the sum of $6,000.

Appellant filed a motion for a new trial. The specifications therein being as follows: (1) Excessive damages; (2) verdict not sustained by sufficient evidence; (3) error in giving certain instructions; and (4) error in refusing to give certain instructions.

In support of the contention that the verdict is not sustained by sufficient evidence, appellant says appellee was guilty of contributory negligence, in that he, "with no obstructions to the view in the street, rode heedlessly across the street without looking to his right for an approaching car that he could have seen in ample time to have avoided the accident." In disposing of this contention, we must keep in mind that contributory negligence is a matter of defense, and that want of contributory negligence need not be alleged nor proved by the plaintiff in an action for injury to his person. The undisputed evidence is that the gate on the south side of the street across the private roadway

was open; that the truck in which appellee was riding stopped before crossing the street. What appellee did after he started across the street is not disclosed by the evidence. Whether he looked to the east or to the west or whether he failed to look in either direction is not disclosed. He stopped before starting across a street paved to the width of sixty feet. He knew a train of cars was approaching the street on his right. The watchman had gone out to, or at least toward, the center of the street, to warn travelers on the street of the approaching train. Appellee was under the duty of looking to the left as well as to the right to see if any person was approaching on the street. Ordinary care required this. He may have looked to his right as he entered the street, and for some reason was not able to see appellee's car at that time. When the truck in which appellee was riding stopped before crossing the street, the train of cars was about twenty-five or thirty feet east of him and from ten to fifteen feet south of the street. It was moving toward the street at a speed, estimated by various witnesses, of from six to fifteen miles an hour. Appellant at that time was about 150 feet east of the railroad and traveling at a speed of thirty to thirty-five miles an hour. As the train approached the street, appellant approached and crossed the railroad without checking the speed of his automobile. When appellant crossed the tracks, the north end of the train was about one-third of the way across the street, and so close to appellant that the switchman who was riding on the top of the train said he thought appellant was going to hit the train; that he hollowed to appellant and gave the engineer a signal to stop. This is not a case where the plaintiff had the burden of proving that he was not guilty of contributory negligence. There is evidence that the watchman held up the "Stop" sign before appellant reached the railroad. Appellee, not being required to show want of

care on his part, we cannot say as a matter of law that he was negligent in crossing the street in the manner and at the time he did. We cannot say, as appellant contends, that appellee abandoned the use of his own faculties, and trusted entirely to the "care and caution of the driver, whose negligence caused or contributed to the accident." Of course, if appellee, in the exercise of reasonable care, should have seen the approaching car of appellant, and could thereafter, in the exercise of reasonable care, have directed the attention of the driver of the truck to the approaching car in time so that the driver, in the exercise of reasonable care, could have prevented the collision, it would have been appellee's duty to have done so. The jury, however, was justified in finding that the evidence did not show he was guilty of any negligence which contributed to his injury. In considering this question, the jury had a right to consider appellee's knowledge of the passing train and the act of the flagman.

Complaint is made of the action of the court in giving instructions 10, 11, 12, 14 and 19.

Instruction 10 was to the effect that the negligence of the driver of the truck in which appellee was riding could not be imputed to appellee, and that if the injury to appellee was caused by the negligence of both appellant and the driver of the truck, appellee would be entitled to recover if he had exercised reasonable care for his own safety. Appellant insists the giving of this instruction is error, on the ground that the driver of the truck and appellee were fellow-servants, and that the negligence of the driver was imputable to appellee. We do not concur in this contention. The instruction is not subject to this objection.

Instruction 11, after stating that it was for the jury to determine whether appellee had exercised reasonable care for his own safety, told the jury that the highest degree of care might sometimes

consist of inaction under circumstances of great or sudden peril; that interference with the driver might be disastrous, and that a person riding in an automobile with another should not, in every case, be held guilty of contributory negligence merely because he did nothing. There was no error in giving this instruction.

In instruction 12, attention was called to the statutory provision that no person shall drive or operate a motor vehicle upon a public highway at a speed greater than is reasonable or prudent, having regard to width of the highway, density of population, condition of the weather, or so endanger the life or limb or injure the property of another; that if the rate of speed exceeds fifteen miles an hour through the closely-built-up business portion of any city, such rate "shall be *prima facie* evidence that the motor vehicle is being operated at a speed greater than is reasonable or prudent." That the jury had a right, in determining whether appellant was operating his automobile at a greater speed than was reasonable or prudent, to take into consideration all facts bearing on that subject as shown by the evidence, and if the jury found from the evidence that appellant was driving his automobile faster than was reasonable or prudent, having regard to the circumstances, it should find he was negligent, but if it found that the automobile was not being driven faster than was reasonable or prudent, it should find for appellant on the question of negligence. Appellant, complaining of this instruction, says it is not applicable to the evidence; that there is no evidence that the scene of the accident was in a closely-built-up business section of the city. There is no claim that it was in a residence section of the city, where, under the statute, a speed of twenty-five miles or less an hour would not be *prima facie* evidence of negligence. If there had been any evidence that the accident took place in a residential section of the city, the court, on re-

quest, without doubt, would have given an instruction covering that phase of the evidence. Appellant, instead of tendering an instruction upon that theory, in instruction 11, which he requested the court to give, asked the court to instruct the jury that if it found appellant's automobile was being driven in an "industrial" portion of the city at a speed of "twenty-five or more miles" an hour, such fact would not necessarily prove that such speed was greater than was reasonable and prudent. This tendered instruction, if given, would have told the jury that the greatest speed an automobile could be driven in an industrial section of a city would not be *prima facie* evidence of negligence. This instruction, as tendered, is not in accordance with our understanding of the law, and we hold there was no error in giving instruction 12, nor in refusing to give instruction 11.

By instruction 13, the court called attention to §10154 Burns 1926, which provides that, except as therein provided, every motor vehicle traveling on any *public highway* shall give the right of way to any other motor vehicle approaching along an intersecting highway from the right. The attention of the jury was also called to an ordinance of the city of South Bend, which provides that all public streets, avenues and boulevards therein are declared preferential traffic streets as to all intersecting alleys and making it the duty of every person operating any vehicle upon any alley to bring such vehicle to a stop before entering upon any public street and that all vehicles upon such streets have the right of way over all vehicles on intersecting alleys, and subjecting a person violating this ordinance to a fine and possible imprisonment. The court, assuming the statute and ordinance were applicable to a case where the driver of an automobile was emerging from private grounds on a private roadway, as in the instant case, also instructed the jury as to the rights and duties of the

drivers of automobiles in cases where the statute and ordinance were applicable, that is, to cases where both automobiles were being operated on public highways. In instruction 14, of which complaint is made, the court, after calling attention to the provisions of the above statute and ordinance, instructed the jury that if the driver of the truck did not violate either the statute or ordinance, it should find for appellee on that question, and if the driver did violate the statute or ordinance, his negligence could not be imputed to appellee. The statute, by its terms, is only applicable to motor vehicles traveling on "public highways," while the ordinance, as we understand it, relates to travelers on public alleys. Neither the statute nor the ordinance applies to vehicles entering a public highway or street from private property on a private driveway. Appellant, however, makes no complaint of these instructions on the ground that the statute and ordinance are not applicable. In fact, appellant tendered instructions on the same theory. There is no claim that the jury was misled or confused by reason of such instructions. Although appellant makes no objection to instruction 13, it should not have been given. Neither should 14 have been given, but its giving does not amount to reversible error. This is especially true when we take into consideration that appellant in his instructions 12 and 13 requested the court to give similar instructions.

In *Uhl* v. *Fertig* (1922), 56 Cal. App. 718, 206 Pac. 467, the plaintiff's car entered upon a public street from private grounds. The defendant contended, on appeal, that the driver of the plaintiff's car was guilty of contributory negligence. In support of that contention, appellant asserted that, as between a motor vehicle moving along a public highway and another vehicle emerging from private property abutting the highway, the former must be conceded the first right to pass. The court as-

sented to that proposition, and, on page 725, said: "It would seem to be a rule founded upon the reasonable necessities of the situation assumed. The conditions which surrounded the parties at the time and place where the accident herein referred to occurred well illustrate the need for declaring the rule to be as indicated. Over that thoroughfare a great deal of vehicular traffic constantly passed, and high rates of speed were maintained. The casual machine that might emerge upon the highway from private property aligning the same could better suffer the small delay by allowing precedence to the highway traffic and so not only avoid obstructing the latter but decrease the danger of injury by collision. Once it is determined that the right of way was in the defendant, it follows that the latter was not required to watch with the same vigilance all abutting private property for the coming of possible obstructions to his progress as he would be required to watch along the surface of the highway ahead of him and at intersecting public ways. Traveling at a high rate of speed—thirty-five miles an hour being permitted—the duty was imperative that such driver should keep his eyes on the road. He was not required to anticipate the unexpected event that a motor vehicle would suddenly issue forth from private grounds and cross the highway in front of him. He had not the duty to look across hedges or through shrubbery, nor yet to scan the ground within the line where shade trees bounded the footway outside the property line."

Generally speaking, we think it may be said that a motor vehicle being operated upon a public highway has the right of way and prior right of passage over another motor vehicle which is emerging from private property on a private way, and that is the rule, without any reference to whether the vehicle on the private way is to the left or to the right of the

vehicle on the public highway. See, also, *Snibbe* v. *Robinson* (1927), 151 Md. 658, 135 Atl. 838, 50 A. L. R. 280: *Kemmish* v. *McCoid* (1921), 193 Iowa 958, 185 N. W. 628. In the case last cited, the court in discussing the duty of the driver of a vehicle entering upon a public highway from a private driveway, said: "It was clearly the duty of Mrs. Kemmish, before entering the highway, to look to the north for approaching vehicles, and not to proceed into the highway if she saw one coming, unless, as a reasonably prudent and cautious person, she believed and had a right to believe, that she could pass in front thereof in safety. If the approaching vehicle was traveling upon the west side of the traveled portion of the highway at a rate of speed and so close to the intersection that the driver thereof would not, in the exercise of his statutory and common-law duty, have sufficient time to turn to the left and avoid a collision, then it was her duty to wait until the intersection was passed. If, on the other hand, she had looked and seen a car approaching, and, as a reasonably prudent and cautious person, believed that she could pass safely into the highway, giving defendant such time and notice as would enable him, in the exercise of his duty, to turn to the left and avoid a collision, she would have a right to do so. She was not required to exercise an infallible judgment, but to use such care as a reasonably cautious and prudent person would exercise under the circumstances." In speaking generally in relation to a driver of a motor vehicle entering a highway in front of another motor vehicle, the court said: "The driver of a motor vehicle may not go upon the highway in front of another motor vehicle traveling at a rapid rate of speed and rely for safety upon the driver of the approaching car to pass to the left in time to prevent a collision, or to operate it with due care and without negligence. *Judd* v. *Webster* (1920), 50

Cal. App. 743, 195 Pac. 929. It is the duty of such driver to exercise reasonable care, and, unless it is reasonably manifest to a person in the exercise thereof, that the highway may be entered with safety to the drivers of both cars, to wait until the one already upon the highway has passed."

For a discussion of the rights and duties of drivers of motor vehicles upon preferential highways and intersecting highways, see *Ramp* v. *Osborne* (1925), 115 Ore. 672, 239 Pac. 112, and authorities therein cited.

By instruction 19, the court, after stating that there was some evidence to the effect that the flagman at the railroad crossing was signaling for the east and west traffic on Sample street to stop, charged the jury that it was for it to determine whether or not appellee was in the exercise of ordinary care in presuming, if he did presume, that by reason of such signaling no automobile would cross the railroad from the east. While it is probably the law, as contended for by appellant, that the flagman was in the street for the purpose of warning travelers on Sample street of the approaching train and for the protection of the railroad property and that he was not there for the protection of a person traveling on the private roadway who was not intending to cross over the railroad, it does not necessarily follow that the jury in determining whether appellee was negligent could not take into consideration the act of the flagman and appellee's knowledge of the act of the flagman. We are of the opinion that the jury had a right to consider all facts disclosed by the evidence relating to the question of appellee's negligence, including the acts of the flagman, and that there was no reversible error in giving this instruction.

There was no error in refusing to give tendered instruction 13. This instruction related to the statutory duty of

the operators of motor vehicles at the intersections of public highways. This instruction, if given, would have told the jury that it was the absolute duty of the driver of the truck to have given the right of way to appellant; that if he failed to do so, he was negligent, and if the driver's negligence was the proximate cause for the injury to plaintiff, the verdict should have been for appellant. Not only was the statute not applicable to the facts, but the instruction as tendered was erroneous, in that it made it the absolute duty of the automobile on the left to give the right of way, without reference to any other fact or circumstance.

Instruction 14 tendered by appellant was to the effect that the driver of the truck was a fellow-servant of appellee and that his negligence would be imputed to appellee. There was no error in refusing this instruction.

Tendered instruction 15 was, in effect, the same as 14. There was no error in refusing to give any of these instructions.

A verdict for $6,000 is not so large as to impress us that the jury was influenced by passion, prejudice or any improper motive, and we cannot say, as a matter of law, that it is excessive.

Judgment affirmed.

Dausman, J., absent.