INDIANA INSURANCE COMPANY *v.* HANDLON

[No. 27,350.   Filed February 5, 1940.]

*Emmett S. Huggins,* of Indianapolis; *Roy W. Adney* and *Richard Adney,* of Lebanon, for appellant.

*George S. Stewart,* of Indianapolis; *Elza O. Rogers,* and *William H. Smith,* of Lebanon, for appellee.

SHAKE, C. J.—The issues upon which this case was tried below were formed on a complaint in two para-

graphs, to which there was an answer in general denial. The first paragraph of complaint alleged that the appellant practiced a fraud upon the appellee by inducing him to release for $100 a valuable cause of action for personal injuries caused by the negligence of one Holmes. The second paragraph contained the same facts, except that it alleged that appellee's cause of action against Holmes, which he was fraudulently induced to release, was good on the theory of the last clear chance. There was a jury trial, which resulted in a verdict and judgment in favor of the appellee for $1250. This appeal is from the denial of the appellant's motion for a new trial. The errors claimed are: (1) that the trial court should have directed a verdict for the defendant at the close of the plaintiff's evidence; (2) that the verdict was not sustained by sufficient evidence and that it was contrary to law; (3) that the damages assessed were excessive; and (4) that the court erred in giving certain instructions on its own motion and in refusing other instructions tendered by the appellant.

The plaintiff introduced evidence from which the jury was warranted in finding the following facts: Holmes owned a motor truck which was insured against public liability by the appellant. About six o'clock p. m. on Saturday, January 7, 1933, one DeKalb was driving said truck for Holmes southwest on Kentucky Avenue in the city of Indianapolis. Kentucky Avenue is sixty feet wide and carries two car tracks, which are five feet apart. It is twenty-two and one-half feet from the west curb to the nearest track. Appellee, a laboring man about forty-five years of age, was standing in Kentucky Avenue at a point about two hundred feet beyond its intersection with West Street. He carried a chunk of coal of uncertain size on his left shoulder. The

traffic was heavy at the time. The truck approached appellee at a speed of thirty miles per hour, without headlights. Appellee was struck by the truck and knocked four or five feet and rendered unconscious. He was removed to the City Hospital in an ambulance. It was there ascertained that he was suffering from shock and concussion. He had a wound in the head that required ten stitches to close and both bones of his lower right leg were fractured. The limb was placed in a cast and appellee was removed to his home the next day. One Smith, an attorney and claim agent for appellant, called on appellee two or three times. He was at appellee's home on January 17th, in company with Hume, the appellant's superintendent of claims. The claim agents told appellee on that occasion that they had visited the hospital, seen the x-ray plates, talked with the doctors, and had learned that appellee's leg was not broken and that he would be able to return to work in three or four weeks. Appellee was not regularly employed and had been receiving public aid. The claim agents inquired how much money appellee would need for groceries, fuel, rent, and insurance for a month. They then offered him $100 to settle his claim against Holmes, spreading that amount in currency before him on the bed. Appellee's wife took the money and he signed a release by mark, one claim agent holding him up and the other guiding the pen. Thereafter appellee returned to the hospital for two operations made necessary by his injuries. One operation required an incision six to ten inches long to the bone of his leg. A metal band was placed therein. Thereafter a three inch incision was required to remove the metal. The doctors testified that at the time of the trial appellee was suffering from a permanent partial impairment of the leg.

The record discloses that at the close of the plaintiff's evidence the defendant moved for a directed verdict in its favor. When the motion was denied it ▮ offered evidence in its own behalf. If a defendant in an action, upon the close of the plaintiff's evidence in chief, moves the court to direct a verdict on such evidence in his favor, he must stand by his motion; for, if he subsequently introduces his own evidence, he will be regarded as having waived or receded from his motion, and therefore no question can be considered under such motion on appeal. *Baltimore, etc., R. W. Co. v. Conoyer* (1898), 149 Ind. 524, 527, 48 N. E. 352, 49 N. E. 452.

In determining the sufficiency of the evidence we must therefore look to the whole of it, rather than to the part offered by the plaintiff below. In this ▮ consideration we accept as true all facts, and all proper inferences which the jury might draw from the facts, that are calculated to sustain the verdict. This court does not concern itself with conflicts in the evidence or the credibility of witnesses. When so viewed, the evidence epitomized above is ample to sustain the verdict. It was proper for the court to permit the jury to say whether the operation of a motor vehicle over a heavily travelled thoroughfare at a speed of thirty miles per hour, and without headlights in the nighttime, was negligence. *Red Cab, Inc. v. White* (1938), 213 Ind. 269, 12 N. E. (2d) 356. A release of a claim for personal injuries may be avoided if it is executed in reliance upon misrepresentations as to the nature or extent of the injuries, amounting to fraud on the part of the releasee or his agent. 48 A. L. R. 1488 (annotation). There was likewise sufficient evidence to go to the jury on the issue of fraud.

We have also been asked to hold that appellee was guilty of contributory negligence as a matter of law. Recently we had occasion to consider somewhat fully the circumstances under which a court may hold a plaintiff guilty of contributory negligence as a matter of law. *Baltimore & O. R. Co.* v. *Reyher* (1939), *post* p. 545, 24 N. E. (2d) 284, 286. In that case we said:

> "Contributory negligence is ordinarily a question of fact for the jury. It is only where the controlling facts are not in dispute and are susceptible of but one conclusion upon the part of reasonable men, that the question becomes one of law for the court. When the facts are of such nature and character as to be reasonably subject to more than one inference, the jury should be permitted to decide whether the party whose conduct is under inquiry was guilty of contributory negligence."

The facts were in dispute and would reasonably support different inferences as to whether appellee was in the exercise of ordinary care for his own safety. We would therefore not be authorized to hold appellee guilty of contributory negligence.

Appellant says that there was undisputed evidence that the most the appellee ever asked in settlement of his claim before suit was $250, and asserts that the verdict for $1250 is therefore excessive. We cannot lend our approval to that view. Since it is the policy of the law to favor and encourage the compromise of differences, one who makes an unsuccessful effort toward that end should not be penalized.

Proposition VII of appellant's brief undertakes to present for review the action of the trial court in refusing to give eleven instructions tendered by appellant, and Proposition VIII challenges eight instructions given by the court on its own

motion. The propositions, points, and authorities are so general, vague, and indefinite that we would be warranted in refusing to consider any of the instructions, and, in any event, we could hardly be expected to discuss each of them separately. We have examined all of the instructions in the record and are of the opinion that the jury was fully and fairly charged, and that there was no reversible error in rejecting any of appellant's tendered instructions. We will notice, in a general way, some of the appellant's propositions relating to instructions. Among these is the claim that the court erred in giving its instructions 8 and 10. These were as follows:

"No. 8. The law interprets ordinary care to be that degree of care which a person of ordinary prudence, under the particular circumstances is presumed to exercise to avoid injury.

"No. 10. One confronted with sudden peril need not exercise the degree of care required of persons under other circumstances but need act only with that degree of care which an ordinary prudent person would exercise under like conditions."

Objection is made to the use of the word "degree" in the above instructions, and our attention is directed to the case of *Union Traction Co.* v. *Berry, Admr.* (1919), 188 Ind. 514, 121 N. E. 655, 124 N. E. 737, 32 A. L. R. 1171. In that case this court condemned an instruction which told the jury that a common carrier is held to the highest degree of care and diligence for the safety of its passengers consistent with the mode of conveyance employed, and that omission on the part of the carrier to exercise the highest degree of practicable care constitutes negligence on its part. That instruction was palpably improper for the reason that the common law of this state does not recognize degrees of due care or negligence. The use of such terms as "slight care," "great care," and "highest degree of

care," as indicating the quantum of care exacted by the law, has no proper place in instructions in negligence cases, since they would invade the province of the jury. However, the instructions here being considered do not, in our opinion, violate the rule above referred to. The court below did not undertake to suggest that there were different degrees of due care or negligence, but merely indicated that the degree of care required was ordinary care. The word "degree" as used in the court's instructions 8 and 10 was surplusage which could not have misled the jury.

Appellant tendered certain instructions which, if given, would have withdrawn from the consideration of the jury the issues formed on the second paragraph of the complaint. That paragraph was predicated on the theory of the last clear chance, and in urging that its instructions relating to that subject ought to have been given, appellant says in its brief: "No evidence was introduced by the appellee up to the time appellee rested his case in chief to support the theory of last clear chance." We have already pointed out that we cannot consider appellee's evidence in chief separately, since appellant also offered evidence. Considering the evidence as a whole, there was some proof of a last clear chance and the appellant's instructions to withdraw that issue were properly refused.

Judgment affirmed.

Note—Reported in 24 N. E. (2d) 1003.