KAVANAGH v. BUTORAC.

[No. 20,399. Filed December 12, 1966. Rehearing denied January 12, 1967. Transfer denied April 14, 1967.]

140

*James J. Stewart, Richard L. Fairchild,* and *Murray, Stewart, Irwin & Gilliom,* of counsel, of Indianapolis, for appellant.

*Charles T. Gleason, William J. Wood,* and *Shortemeier, Eby & Wood,* of counsel, of Indianapolis, for appellee.

WICKENS, Chief Justice.—The trial court acting without a jury, awarded plaintiff-appellee a judgment of $100,000 for personal injuries. Appellee was a passenger in an auto which collided with a motor vehicle driven by appellant. As a result of the collision appellee suffered an injury resulting in the surgical removal of his left eye and other injuries the latter of which the record treats as of minor significance.

Although the evidence is not conclusive that the damage to appellee's eye was brought about by its forcible contact with the rear view mirror, that probability is hardly disputed. It is established without question that the car in which appellee was riding as a front seat passenger was equipped with seat belts and appellee's lap-belt was unfastened at the time of impact.

At the time of injury appellee was a 38-year old married man with children. He had a graduate degree and was employed as a bacteriologist at an annual salary in excess of twelve thousand dollars. He was interested, and engaged, in Little League baseball, swimming, hunting, and other athletic activities.

There was evidence to show that appellee, as a result of the injury, was afraid to go hunting and when swimming he feared to dive. Uncertainty as to his driving, difficulty in parallel parking, and disadvantages with respect to his work were shown by the evidence. In his Little League participation he required help in matters formerly handled entirely by him. His work, he contended, was adversely affected in that he was no longer able to use a binocular microscope and because of his fear of danger he had ceased to handle any "hot" or dangerous virus. It was shown that his work was dependent upon good vision and that there were dangers in the handling of toxic serums and in immunization of animals. In pouring liquid into a tumbler he was impaired by vision.

He had had the experience of burning his hand on a Bunsen burner which he attributed to a lack of depth in vision.

There is evidence as to the adverse psychological effect of the injury on appellee and this is affirmed by a medical witness called by appellant, this witness related: "He has suffered a psychological trauma as well as a physical one," and "There may be hurts underneath; there may be doubts or worries or fears, but strangely enough these are things that an ophthalmologist or surgeon does not ask a patient directly."

We think the preceding very briefly summarizes that evidence relating to damage which is most favorable to the decision. Although appellant introduced evidence and raised serious questions as to the extent of appellee's disability we are confined in our consideration to that evidence most favorable to appellee. We are, of course, not allowed to weigh the evidence. *Dent* v. *Dent* (1960), 241 Ind. 606, 613, 174 N. E. 2d 336; *Watson* v. *Watson* (1952), 231 Ind. 385, 388, 108 N. E. 2d 893; *Zorich* v. *Zorich* (1949), 119 Ind. App. 547, 553, 88 N. E. 2d 694.

Appellant has asserted that the damages are excessive, that appellee proximately caused his own injury by contributory negligence and that the trial court committed error in refusing to consider newly discovered evidence and erred by certain other evidentiary rulings.

Broadly stated the person injured by the negligence of another is entitled to reasonable compensation. Courts have said that term means such sum as would reasonably compensate him for bodily injuries, for pain and suffering. To that sum shall be added past, present, and future expenses reasonably necessary or incidental to the plaintiff's effort to alleviate his injuries and all pecuniary losses suffered, or to be suffered, as a result of inability to engage in his usual occupation. "Compensation is the stated goal of a court when measuring damages for personal injuries." 22 Am. Jur. 2d, Damages § 85, p. 121-122.

By nature, injuries personal to the individual, are incapable of a more definite rule for measurment of damages. Each action is unique and it must be so treated and determined on the facts peculiar to that matter. Because our law seeks to individualize the solution to the problem of properly compensating the victim of torts, no overall expedient applies in every case.

For a formula then, our common law sets only the general guidelines for compensating the victim, each in its own way to be considered by the trier of facts and weighed to determine what the total compensation will be. Because of this personal nature of each case and since the decision is unique to the particular set of facts our courts have said the trier of facts is to be given "sound discretion," and "liberal discretion" where damages cannot be defined and calculated with mathematical certainty or by any exact standard. *Haskell, etc., Car Co.* v. *Trzop*, (1920), 190 Ind. 35, 48, 128 N. E. 401; *Jackson Rec.* v. *Rutledge* (1919) 188 Ind. 415, 429, 122 N. E. 579; *Goldblatt Bros. Inc.* v. *Parish* (1941), 110 Ind. App. 368, 380, 33 N. E. 2d 835; *Hooper* v. *Preuss* (1941), 109 Ind. App. 638, 641, 642, 37 N. E. 2d 687.

With the foregoing in mind we have examined the record and briefs in this appeal. Appellant has documented numerous cases to show that the instant judgment far exceeds what as he says "in Indiana or elsewhere" has been allowed for what he submits to be "comparable injury." We are not able to say the loss of an eye in one case is worth the same or just about the same in another case. If such a system is to be desired (and we express no sentiment for such idea) it must come from legislation.[1] Our common law requires each case to rest finally on its own merits.

---

1. "The adequacy of traditional tort law as an instrument for adjusting claims for injuries arising out of automobile accidents has been challenged in legal periodicals for nearly fifty years." 52 A. B. A. J. 926 (1966). See article for various theories discussed.

This has been well expressed by many authorities and we call attention to the language of the Supreme Court of Louisiana:

". . . [C]ases relied upon may be similar in that each of them involves a similar injury such as a broken arm, the loss of an eye or eyes, or the loss of some member of the body. Thereafter, however, the similarity ceases for each case is different, and the adequacy or inadequacy of the award should be determined by the facts and circumstances peculiar to the case under consideration. The primary purpose of the judge or the jury in fixing the award in a personal injury case is to adequately compensate the injured person for his injury under the facts shown to exist in his case." *Gaspard* v. *LeMaire* (1963), 245 La. 239, 158 So. 2d 149, 158.

We would have it understood that the duty devolves on a trial court to determine the amount of damages. Whether the court is assisted by a jury or is not, review on the appellate level should be the same. The determination of the amount is not our decision. We are not required and we make no effort to say what our decision might have been if we were triers of the facts.

Our Supreme Court has said:

"That the jury assessed higher damages than we would have done, is no reason why we should set aside the verdict."*Chenowith* v. *Hicks* (1854), 5 Ind. 224, 226.

Chancellor Kent who appears to have originated the rule as that rule is presently used in Indiana, as to when a reversal should be ordered, said:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption." 22 Am. Jur. 2d, Damages, § 366, p. 473; *New York Cent. R. R. Co.* v. *Johnson, Admx., etc.* (1955), 234 Ind. 457, 466, 127 N. E. 2d 603; *Ideal-Fitzgerald Baking Co.* v. *Cheek* (1965), 137 Ind. App. 317, 205 N. E. 2d 332, 333.

Appellant also argues that the excessive amount of the verdict is exhibited by the fact that the judgment was for an amount ". . . more than twice the amount that plaintiff was willing to accept for his claim immediately prior to trial." The information concerning settlement negotiations has no proper place in the record. It should receive no consideration from the trial court or from this court on appeal. To promote and encourage parties to negotiate and thus to stimulate compromise is desirable and for that reason evidence of efforts that the parties may have made toward settlement are not accepted for any purpose. Where the verdict was for five times "the most appellee ever asked in settlement" our Supreme Court said:

> "Since it is the policy of the law to favor and encourage the compromise of differences, one who makes an unsuccessful effort toward that end should not be penalized." *Indiana Insurance Co.* v. *Handlon* (1939), 216 Ind. 442, 447, 24 N. E. 2d 1003.

Our decision is that we cannot reverse on the ground that the verdict is excessive. This also is the answer to the question briefed by both parties as to whether this court has authority to order a remittitur under the circumstances here.

Next we are concerned with appellant's contention of the existence of contributory negligence as a matter of law. This argument is urged because of two asserted reasons: (1) "on failing to keep a proper lookout" and (2) the failure "to use an available safety device, to-wit: a seat belt, which the uncontradicted evidence established would have prevented or substantially minimized the appellee's injuries."

We are convinced from appellant's brief that a passenger has some duty to maintain a proper lookout. 3. I. L. E., *Automobiles,* § 87, p. 442; 21 I. L. E., *Negligence,* § 4, p. 267.

Further, if appellee as a passenger in the exercise of reasonable care should have seen the approaching car of appellant and could thereafter in the exercise of such care directed the attention of the driver of the vehicle in which he was riding in time so that that driver exercising such care could have prevented the collision, it would have been appellee's duty to have so acted. *Mattes* v. *Bruggner* (1928), 88 Ind. App. 36, 44, 159 N. E. 156.

The fact that such general assertions are true is not of itself sufficient to establish the contention that whatever appellee did or did not do in this case constitutes contributory negligence as a matter of law. Even if there is no conflict in the evidence the trial judge may have believed that due care on the part of the passenger would not have avoided the collision or injury.

> " 'This court has many times said that contributory negligence is ordinarily a question of fact for the jury, and that it is only in cases *where the facts are undisputed and where only a single inference can be reasonably drawn therefrom* that this court can say, as a matter of law, that a certain course of conduct does, or does not, constitute contributory negligence. *Inland Steel Co.* v. *King* (1916), 184 Ind. 294, 110 N. E. 62.' (Our emphasis.)" *Baltimore & Ohio R. Co.* v. *Patrick, Admtrx.* (1960), 131 Ind. App. 105, 117, 166 N. E. 654.

On his theory that the failure to "buckle up" the available seat belt is a bar to recovery, appellant advances also the doctrine of avoidable consequences. He cites 15 Am. Jur., *Damages,* § 27 to the effect that one who is injured is bound to exercise reasonable care and diligence to avoid loss or to minimize resulting damage. This theory is well recognized by many authorities.[2]

"Where one person has committed a tort . . . against another, it is incumbent upon the latter to use such means

2. Harper & James, § 20.3, p. 1130, 1131 (1956); 22 Am. Jur. 2d, Damages, § 30-44, pp. 50-71; 25 C. J. S., Damages, § 32-36, pp. 697-717.

as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided."

and

". . . the doctrine of avoidable consequences is not considered a defense at all, but merely a rule of damages by which certain particular items of loss may be excluded from consideration." McCormick, *Damages*, ch. 5, § 33, pp. 127 and 130.

This is explained by that author on the basis that the law seeks not only to prevent and repair individual loss and injustice, but to protect and conserve the economic welfare and prosperity of the whole community. He states further at p. 127, *supra:* "The machinery by which the law seeks to encourage the avoidance of loss is by denying to the wronged party a recovery for such losses as he could reasonably have avoided . . ." This doctrine differs from contributory negligence in that the latter comes into action *before* the defendant's wrongdoing has been completed. Thus contributory negligence to bar recovery must be a proximate cause of injury. Although the theory of avoidable consequences has merit, and failure to use the belts may come into action after the proximate cause, we have no authorities which we believe permit us to invoke that doctrine under the evidence here to avoid or to lessen the damage. We recognize possibility of the doctrine applying in some future date and in some matter where the circumstances are clearer than the instant case in showing that some part of the injury would not have occurred except for the fact that plaintiff failed to avoid the consequence of the tort by not fastening his seat belt. If the doctrine were applicable, sufficient proof is unavailable to permit us as a matter of law to say that the results if seat belts were fastened, could not have included the identical eye injury. Defendant-appellant submitted the testimony of an expert on safety who conducted certain tests

on a similar vehicle. His competent opinion was that plaintiff would not have collided with the rear view mirror if his seat belt had been "properly" fastened. However this is an opinion which the trial judge was at liberty to regard favorably, or to disregard utterly. 13 I. L. E., *Evidence*, §§ 312, 313, pp. 184, 186.

> Such expert testimony and the record insofar as seat belts are concerned are insufficient for us to base a remittitur because of avoidable consequences or to grant a reversal in this case.

Appellant urges this court to recognize public policy in changing old law and establishing new law. He avers that where a new factual situation develops for the first time, "the courts have an absolute inherent right to change law whenever it becomes outmoded." On this premise and generally that the common law does not consist of rules absolute, fixed or immutable he cites 15 C. J. S., Common Law, § 2, p. 613, and *Helms* v. *American Security Co.* (1939), 216 Ind. 1, 6, 22 N. E. 2d 822. We can understand and agree with these assertions. But the conclusion appellant urges is the recognition of a new common law doctrine that the failure to use available seat belts is contributory negligence as a matter of law. We have given consideration to appellant's learned and persuasive argument on that subject. In that connection we have considered the evidence in this case including the expert testimony. We have taken judicial knowledge of the subject of public records and surveys thereof *as of the time of the accident.* Without predicting that the time will not come when appellant's proposal becomes a common law dogma, we hold that this court cannot in this case say as a matter of law that failure to use available seat belts is contributory negligence.[3]

---

3. We are aware of the growing support for the use of seat belts. See "Trial" (A. T. L. A.). Vol. 2, p. 36 (1966). Also in one jurisdiction an appeals court has held in an F. E. L. A. case, where if death of employee is caused "in part" by employer's negligence, employer may

Other rulings of the court which appellant assigns as error of law occurring at the trial are:

1. The court erred in its failure to modify the judgment or grant a new trial on the basis of newly discovered evidence.

2. The court erred in sustaining certain objections to questions propounded by defendant.

Under the first objected ruling above, appellant points out that in his motion for new trial affidavits were submitted from men who had also lost an eye to establish that they would testify they were able to play ball and hunt, and that they suffer no social accidents or embarrassment on account of their handicap. Appellant appears to recognize the general rule that newly discovered evidence going to the sole question of damages cannot ordinarily be made the basis for granting of a new trial. A new trial will not be granted for new evidence solely concerning damages. *Ellis* v. *City of Hammond* (1901), 157 Ind. 267, 270, 271, 61 N. E. 565; *Curtis* v. *Mann* (1938), 105 Ind. App. 601, 609, 14 N. E. 2d 345.

This additional evidence is urged, however, on the theory that "the magnitude of the judgment entered by the court" made it apparent "that the court had taken into consideration in assessing damages matter de minimus and damages of a purely speculative and psychological nature." Also appellant insists that Rule 1-8, Rules of the Supreme Court, permits the trial court, in a case which has been tried without a jury, to open up the judgment, take additional testimony and direct entry of a new judgment. We are in agreement with the argument that no error would have been committed by the trial court if it had opened the judg-

be liable because of failure to provide seat belts although the collision was also attributed to criminal negligence of a drunken driver. *Mortensen* v. *Southern Pacific Company* (1966), 53 Cal. Rptr. 851, 853. These and the many daily observations concerning use of seat belts do not necessarily reflect the situation pertaining at the time of this accident but seem to indicate future recognition by the common law.

ment and taken additional testimony on appellant's motion. But, our interpretation of Rule 1-8, *supra*, is limited by the words of the rule. The rule says "the court may open the judgment." We can read that only to be permissive. *State ex rel. Sellers* v. *Superior Court etc.* (1963), 244 Ind. 356, 362, 191 N. E. 2d 307.

It is held that courts have wide discretion under a motion for new trial because of newly discovered evidence and we find no abuse thereof. *Kostas* v. *Kimbrough* (1965), 137 Ind. App. 89, 5 Ind. Dec. 49, 51, 205 N. E. 2d 170; *Bartley* v. *Chicago & E. I. Ry. Co.* (1942), 220 Ind. 354, 360, 41 N. E. 2d 805.

That the trial court erred in sustaining appellee's objections to appellant's questions is argued in connection with four rulings all relating to admissibility of evidence concerning seat belts.

In cross-examination of appellee he was asked if he did habitually use the seat belts in his own car, and later as to what was his custom when riding as a passenger in a vehicle equipped with seat belts. Objections to each question were sustained and said rulings are assigned here as error. The objections and appellee's argument are that the information sought by these questions is irrelevant and not material to the issue. To be relevant the evidence sought to be adduced should be directed and confined to matters which are in dispute, or which form the subject of investigation. It has been said whatever naturally and logically tends to establish a fact in issue is relevant. 1 Jones, The Law of Evidence, § 151, p. 269, 270. (5th ed. 1958)

The fact that appellee had not fastened his seat belt when the collision occurred is not disputed. The purpose then of this cross-examination appears to be to show knowledge or awareness on the part of appellee of the existence of some danger which he might avoid or lessen by using the seat belt.

The scope, extent, method and manner of cross-examination must be under the control of the trial court. These rest in its sound discretion. 30 I. L. E., *Witnesses,* § 112, pp. 103, 104.

In matters of knowledge, intent, and the like, as a general rule, the cross-examiner is given wide latitude. That is true where such matters are pertinent to the issues of the case. *New York Life Ins. Co.* v. *Lahr* (1923), 192 Ind. 613, 631, 137 N. E. 673.

Evidence of knowledge or intent is inadmissible, however, if the legal significance of the witness' action is not affected by it. *The New York, Chicago, St. Louis Railroad Company* v. *Hammond* (1892), 132 Ind. 475, 479, 32 N. E. 83.

Here the evidence of appellee's knowledge of danger could only go to the question of contributory negligence or avoidance of consequences and indirectly to that. If the failure to use seat belts could prevent appellee's recovery it would be equally so whether he knew and appreciated the danger or not. There is no legal significance to his knowledge. The real question would be what the reasonably prudent man might be expected to know and appreciate and take steps to avoid. Since the legal significance of appellee's knowledge of the danger is unimportant no error was committed in sustaining objections to the questions even if the evidence can be considered to be relevant or material about which we have some doubt.

Next appellant complains of the court ruling excluding from evidence certain publications relating to the effectiveness of seat belts in preventing or minimizing injury from automobile accidents. The three offered exhibits were entitled: "Seat Belts: Safe or Hazardous," published by the A. M. A.; "Automobile Seat Belts," published by Cornell Aeronautical Laboratory; and "A Seat Belt Could Save Your Life," published by the National Safety Council.

These documents were not matters commonly considered of public record. There was no showing that their contents were known to appellee. Nor does the evidence indicate that the documents had wide circulation which of itself might constitute some proof that the use of seat belts was so normal, natural, safety oriented, and generally accepted that the reasonably prudent man would never fail (under the circumstances involved here) to "buckle up." Without such showing, it is our opinion that the trial court committed no error in excluding the exhibits mentioned.

Scientific treatises generally are not admissible to prove the facts or opinions thereon. *Epps* v. *The State* (1885), 102 Ind. 539, 549, 550, 1 N. E. 491.

That rule remains true in almost all jurisdictions although some argument for change has been advanced. McCormick, Evidence, § 296, p. 620-621.

Other written documents which appellant contends were erroneously excluded from evidence were identified as abstracts for an official Congressional Committee report on the effectiveness of the use of seat belts. Appellant claims that official committee reports of the Congress of the United States are matters of which the court can take judicial knowledge and to this effect he cites 20 Am. Jur., Evidence, § 41, p. 265. The citation mentioned relates to the right and duty of a court to consider journals of the legislature in construing a statute or in other matters where they are pertinent. In a matter where the use of seat belts might or might not constitute reasonable care, the court may properly take judicial notice of Congressional Committee reports and studies on the subject. Since the Committee reports are proper matters within judicial notice of a court it is unnecessary for the court to admit the same as evidence. We find no error in that ruling. *Taggart* v. *Keebler* (1926), 198 Ind. 633, 642, 154 N. E. 485.

The rule involved is explained by Professor Thayer:

"The maxim that what is known need not be proved, *Manifesta (or notoria) non indigent probatione,* may be traced far back in the civil and the canon law; indeed, it is probably coeval with legal procedure itself." 1 Jones, The Law of Evidence, § 120, p. 209 (5th ed. 1958).

Appellant attempted to introduce evidence of a survey as to what use was being made of seat belts by persons having vehicles equipped therewith. An Indiana state police representative was asked certain questions objected to by appellee. However there was no error saved on this proposed evidence because appellant failed to make an offer to prove the answers. *Isenhour* v. *Speece, Admr. et al.* (1958), 238 Ind. 293, 301, 150 N. E. 2d 749.

With respect to all rulings concerning the use of seat belts further observations should be made. All that we have said of contributory negligence and avoidable consequences also applies with equal force to appellant's argument of assumed or incurred risk. We hold that under the circumstances here, contributory negligence as a matter of law was not established by the evidence which showed without dispute that appellee did not fasten the available seat belt. Consistent with that holding reversible error could not have resulted from any ruling of the court on evidence with respect to the subject of seat belts. Our decision that failure to fasten a seat belt was not contributory negligence here is, of course, limited to the facts in this case. The collision would have occurred whether or not a passenger had his seat belt fastened.

The opinion evidence that appellee's eye would not have collided with the rear view mirror if the seat belt was fastened is not the same as conclusive proof that the eye injury would not have occurred.

Only by speculation can it be said that the injuries would not have occurred if the seat belt was fastened. Even the expert qualifies his testimony as to "properly" fastened and

we can assume different passengers will vary the interpretation of "properly." Common knowledge and the expert testimony inform us that only a few inches separate the head of a seat belt user from the same mirror.

Finding no reversible error the judgment is hereby affirmed.

Carson, and Faulconer, JJ., concur.

Prime, J., dissents with opinion.

### DISSENTING OPINION

PRIME, J.—I concur in part and dissent in part. The majority analysis of the applicable law in this case is comprehensive and correct in all respects save one—that this court should not disturb the award of damages. The rule cited by Judge Wickens is that "(t)he damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption." Jury for present purposes means trier of fact, the case at bar having been tried without intervention of a jury.

It is my opinion that the damage award of $100,000.00 is so excessive at "first blush" that some factor other than reasonable compensation for expenditures made and pain and suffering undergone may have entered into its consideration. The attorney for appellee had authority to accept $50,000 for pre-trial settlement, which offer he transmitted to appellant's attorney, who responded with an offer of $25,000 for settlement. The trial court was apprised of these attempts at a negotiated settlement by letters which were placed in the record.

I agree that no rule of thumb is available to evaluate the propriety of an award for any given injury, but such award should be within the bounds of reason. Appropriate statement has recently been made in *Talley* v. *Employers Mutual Lia-*

*bility Insurance Company* (La. Appeals 1966), 181 So. 2nd 784, at page 790:

". . . (I)t is certain there can be no fixed mathematical formula for assessing damages from multiple injuries, with their accompanying pain and suffering and duration. Each case must rest on its own particular facts. The amount awarded need not be the same, but not be too far above or below prior awards for comparable injuries."

Comparable cases in our jurisdiction indicate that the award here is not reasonable.

The judgment should be reversed and remanded on the sole issue of damages, with instructions that the trial court re-evaluate its award significantly downward.

NOTE.—Reported in 221 N. E. 2d 824.