[Civ. No. 3616. Second Appellate District, Division One.—March 6, 1922.]

MEL UHL et al., Respondents, v. H. C. FERTIG, Appellant.

[1] NEGLIGENCE—AUTOMOBILE COLLISION—EXCESSIVE RATE OF SPEED—EVIDENCE.—In this action for damages to an automobile resulting from a collision with a similar vehicle, upon a public highway, the record exhibits some testimony which the trial court had the right to consider as substantially tending to establish the fact that the defendant, immediately before the collision, was traveling at a speed in excess of that allowed by law.

[2] ID.—ATTEMPT TO AVOID COLLISION—SWERVING TO WRONG SIDE OF ROAD—EFFECT OF.—As a matter of law, the act of the defendant in swerving toward the left when it appeared to him that a collision was imminent, instead of continuing on the right-hand side of the highway, was not in itself negligence.

[3] ID.—VEHICLE ON HIGHWAY—RIGHT OF WAY.—As between a motor vehicle moving along a main artery of travel and another vehicle emerging from private ground abutting the highway, the former must be conceded the first right to pass.

[4] ID.—PROXIMATE CAUSE OF COLLISION—CONTRIBUTORY NEGLIGENCE—FAILURE TO SOUND SIGNAL.—In this action, the failure of the driver of the plaintiff's car to sound a signal upon his approach to the highway from private grounds, as required by the Motor Vehicle Act (Stats. 1919, p. 397), was the proximate cause of the collision.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Reversed.

The facts are stated in the opinion of the court.

1. Rights and duties of persons driving automobiles on streets or highways, notes, 5 Ann. Cas. 793; 6 Ann. Cas. 658, 922; 7 Ann. Cas. 551; 8 Ann. Cas. 1092; 13 Ann. Cas. 463; 21 Ann. Cas. 648; Ann. Cas. 1916E, 661.

Effect of speed and application of speed regulation on liability for collision between automobiles, or an automobile and another vehicle at or near corner of streets or highways, note L. R. A. 1916A, 747.

Speed of automobile as negligence, notes, 25 L. R. A. (N. S.) 40; 38 L. R. A. (N. S.) 488; 42 L. R. A. (N. S.) 1178; 51 L. R. A. (N. S.) 993.

O'Melveny, Millikin & Tuller and J. N. Owen for Appellant.

James E. Kelby and Floyd S. Sisk for Respondents.

JAMES, J.—Plaintiffs were awarded judgment for damages. They alleged in their complaint that defendant operated in a negligent manner an automobile upon the public highway, with the result that it collided with a similar vehicle owned by the plaintiffs and damaged the latter. It was particularly alleged that the defendant's car was being driven at a speed in excess of thirty-five miles per hour. The amount of the recovery allowed was the sum of $650, from which judgment the defendant has appealed.

San Fernando Boulevard, in the county of Los Angeles, is a paved thoroughfare twenty-four feet in width. It is one of the main highways carrying traffic to and from points northward in the state, and along its course stage lines and other passenger vehicles are accustomed to travel at a high rate of speed. It is admitted that at the place where the accident hereinafter referred to occurred conditions were such as to authorize a driver of a motor vehicle upon that highway to maintain the maximum speed permitted by the Vehicle Act (Stats. 1915, p. 397, as amended by Stats. 1917, p. 382, and Stats. 1919, p. 191), to wit, thirty-five miles per hour. The highway from the point mentioned extends in a generally northerly and southerly direction and for a great distance it is straight. On the day in question, at about 4 o'clock in the afternoon, defendant was driving a touring car, weighing approximately 5,000 pounds, southerly along the highway and in the direction of the city of Los Angeles. He was driving on the right-hand side of the roadway. Plaintiff's son, a boy eighteen years of age, operating a motor roadster which weighed approximately 2,950 pounds, emerged from a driveway leading from private property and from the westerly side of the highway. It was the intention of the boy to go to a point northerly on the main boulevard, and to do this it was necessary for him to cross the boulevard at right angles and turn to the left. This operation would take him directly across the path of the approaching machine which was, as we have stated, operated by the defendant. There

was a distance from the property line from which the private driveway proceeded, to the edge of the paved portion of the highway, of eighteen feet. To the northward of the driveway and at about the center of this eighteen-foot strip was a row of large pepper trees which at that time of the day cast their shadows over considerable of the width of the paved highway. There was a rose hedge on the property line five or six feet high commencing immediately at the driveway and extending northward for some feet, probably twenty-five or thirty, and several palm trees were set outside the rose hedge and immediately adjacent to the driveway on the north and between the hedge and the line of pepper trees. The inner space back of the property line and to the north of the driveway was set with lemon trees which were about five feet in height. As to the facts now stated there was no dispute. At this point we will narrate the substance of the testimony introduced on behalf of the plaintiff. George Uhl, the young man who was driving plaintiff's machine, testified that he was proceeding out of the driveway at the rate of eight or ten miles per hour and decreased his speed somewhat (how much does not appear) as he approached the gateway. His further narrative was as follows: "When the front end of my machine arrived at the point practically coterminous with the property line there are rose-bushes obstructing the view of the highway toward the north. Back of the rose-bushes about twenty-five or thirty feet and toward the house I could see in a northerly direction along the highway about 500 feet. The rose-bushes referred to obstructed the view of the highway north from the gate along the major part of the fence. As soon as I was even with the property line I could see northerly about 2,000 feet. The road was straight, with a slight decline. As I approached the highway I looked in a northerly direction for the approach of a machine. My speed then was about eight miles an hour and I approached the highway at a right angle. As I approached this pavement I again looked north. My machine, which was an Oldsmobile roadster, at the time it was struck by the other machine, was on the easterly side of the road with the exception of the rear wheel and portion of the outer wheel, which was about one foot westerly of the center line of the highway, and I was headed a slight degree toward

the north when struck, having begun to turn the machine
when the collision occurred. When the collision occurred I
had crossed the center of the road. The machine which
struck me was proceeding southerly. As I started on the
pavement I increased my speed as much as the car would
pick up. The pavement slightly raises upward there. When
I first saw the machine which collided with me it was about
1,000 feet northerly and I was just on or without the
property line when I saw it, my front wheel just ap-
proaching the paved portion of the highway. I did not
keep my eye on it all the time. Upon seeing the machine
a thousand feet away, at the usual rate of speed, I knew I
had time—that the other car would be coming, I knew I
had time to get across, which I did, and my whole machine,
except just about one foot of it was on my side of the road
when I was struck by Mr. Fertig's machine. . . . I should
judge the Pierce-Arrow was driven at a speed of forty miles
an hour or over. After striking me the other machine
driven by Mr. Fertig went about twice the distance I did.
I didn't see Mr. Fertig make any effort to retard his ma-
chine. . . . Seated in a car one can't see over the hedge
along the driveway. I did not stop my car before proceed-
ing on the boulevard. My front wheels were just about
at the edge of the pavement when I started to pick up
speed. From the time I first observed Mr. Fertig until
I was struck I had traveled about fifteen or sixteen feet.
I was going about ten miles an hour, I should judge, when
I was struck. Mr. Fertig was going about forty miles an
hour. . . . As I came out of the driveway I looked in both
directions to see if machines were approaching. None were
approaching from the south, going toward San Fernando,
and I saw none toward the north except Mr. Fertig's ma-
chine. . . . One can't see in a northerly direction until he
is beyond the property line. Just so you are beyond the
property line you can see out both directions along the high-
way. There are no intersecting highways in the vicinity of
the accident, the first junction being about four or five
miles to the south. I paid no attention to Mr. Fertig's car
from the time I first saw it until I glanced and saw him
swerve toward me." Defendant's machine struck the plain-
tiff's car on the left side thereof and about midway be-
tween the front and the rear wheels. The force of the im-

pact carried plaintiff's machine for a distance of forty feet, and defendant's car, after losing its contact, went on for a distance of twenty-one feet before it came to a standstill. There was testimony of one witness showing that, when he arrived shortly after the accident and made certain measurements, he found the distance between the car of the plaintiff and that of the defendant to be greater than we have stated it to be, but there was no evidence showing that the machines were in the same position at the time these measurements were made as they were immediately after the collision.

We have stated in its most favorable light in general substance the testimony for the plaintiffs. We have in addition referred to the fact as to the movement of the two cars after the collision, as shown by their position when they were stopped. We take occasion here to point out that conditions last referred to were not pertinent at all to be considered in estimating the speed at which the defendant was traveling, because the court was not enlightened by the testimony of any witness informed upon that subject as to what might be the movement of machines, after colliding as these machines were shown to have collided. That is, judging from these conditions alone, the court would not have been authorized to conclude that the defendant's speed at the time of the accident was in excess of any particular number of miles per hour. We refer especially to that matter because it is the contention of appellant that there was no substantial evidence conflicting with that given by the defendant and his witnesses as to the rate of speed at which the car driven by the former was being operated at the time. Defendant testified that he was traveling immediately prior to the accident at from twenty-eight to thirty miles per hour. The passenger who was riding with him testified that the speed of defendant's car was twenty-five or thirty miles per hour at the time of the accident. The statement was made by one witness who arrived on the scene after the accident occurred, in which he expressed to the defendant the opinion that defendant's car must have been going fifty or sixty miles per hour. This testimony was of no evidentiary value whatsoever, notwithstanding that it was further stated that defendant made no response to the estimate given by that witness. It was shown that the defendant did immediately

after the collision state that he (defendant) had the right
of way and was going at less than thirty miles an hour.   It
is appellant's claim that there was no substantial evidence
showing that defendant was traveling at more than the legal
speed of thirty-five miles per hour.   The case for the
plaintiff as to this issue rests upon the assertion of George
Uhl.   That witness stated in one part of his testimony that
defendant was traveling at a speed of "forty miles an hour
or over," and, again, that "Mr. Fertig was going at about
forty miles an hour."   No objection was made that this wit-
ness was not qualified to estimate that speed.   This testi-
mony, standing alone, would afford some evidence from
which the court might properly find that the speed of the
defendant's car was forty miles per hour.   Appellant con-
trasts the statements which we have quoted with another
portion of the boy's testimony, wherein he stated that when
he first observed the defendant's car northward on the boule-
vard it was about 1,000 feet away.   As the witness testified
that he had traveled fifteen or sixteen feet going at a
rate of eight or ten miles an hour when his car was collided
with by that of defendant, appellant proceeds to show by a
simple mathematical calculation that the boy's statement of
1,000 feet distance was far-fetched and utterly unreliable.
And indeed it was so.   As appellant argues, if the de-
fendant traveled 1,000 feet while the boy's machine, going
at the rate of ten miles per hour, traveled fifteen or sixteen
feet, then it must have been that the defendant's car was
moving at the impossible rate of over 500 miles per hour.
If we were authorized to assume that George Uhl's capacity
for estimating speed at which a motor-car might be travel-
ing was no better than his capacity for estimating distance,
then the argument of counsel would be altogether sound and
it would follow, as a necessary conclusion, that all of the
testimony given by George Uhl on the question of the speed
of defendant's car was unreliable and should be given no
consideration in the case.   [1]   We cannot so assume, and
it must be said that the record exhibits some testimony which
the court had the right to consider as substantial tending to
establish the fact that the defendant, immediately before
the collision, was traveling at a speed in excess of that
allowed by law.   "If facts are doubtful, as the result of un-
certain evidence or conflict of testimony, the question should

be submitted to the jury.'' (*Davis* v. *California St. R. R. Co.,* 105 Cal. 131 [38 Pac. 647].) So, also, whenever upon the evidence ''the conclusion [of fact] is open to debate, it is for the jury.'' (*Stephenson* v. *Southern Pac. Co.,* 102 Cal. 143 [34 Pac. 618, 36 Pac. 407].) The evidence given by George Uhl was more definite than where a plaintiff's witness described the speed of a defendant's automobile as ''very fast,'' as was the case in *Diamond* v. *Weyerhaeuser,* 178 Cal. 540 [174 Pac. 38]. See, also, *Finkle* v. *Tait,* 55 Cal. App. 425 [203 Pac. 1031].

[2] And we think that the finding as to defendant's negligence can be sustained only because of the evidence of defendant's failure to observe the requirement not to exceed the maximum of thirty-five miles per hour while traveling on the highway. As a matter of law, his act in swerving toward the left when it appeared to him that a collision was imminent, instead of continuing on the right-hand side of the road, was not in itself negligence. Defendant's testimony is entitled to be taken as representing the conditions which caused him to guide his machine to the left, for it stands uncontradicted. He testified that when he saw the plaintiff's car it was sixty or seventy-five feet away and approaching within two or three feet of the paved boulevard, going eight or ten miles an hour. He then testified as follows: ''When I first saw his car I turned to the center of the road to try and avoid an accident with him, thinking that I had plenty of time to go around him and avoid the accident. Just when I applied the brakes I do not know. I had but a fraction of a second within which to act.'' There are many cases, several of which are cited by appellant in his brief, which declare the familiar rule that where a person discovers himself in sudden peril, without sufficient time to weigh all of the surrounding circumstances, that the act which he may then do is not a negligent one, even though it may appear, upon reasoned consideration, that his choice was unwise. ''The rule, judicially stated, is that one who in a sudden emergency acts according to his best judgment, or who, because of want of time in which to form a judgment, omits to act in the most judicious manner, is not chargeable with negligence.'' (20 Ruling Case Law, p. 29.)

[3]   Appellant insists that the evidence shows without conflict that the driver of plaintiff's car was guilty of contributory negligence.   He prefaces the argument to this point with the assertion that, as between a motor vehicle moving along a main artery of travel and another vehicle emerging from private ground abutting the highway, the former must be conceded the first right to pass.   To that proposition we are disposed to give ready assent.   It would seem to be a rule founded upon the reasonable necessities of the situation assumed.   The conditions which surrounded the parties at the time and place where the accident herein referred to occurred well illustrate the need for declaring the rule to be as indicated.   Over that thoroughfare a great deal of vehicular traffic constantly passed, and high rates of speed were maintained.   The casual machine that might emerge upon the highway from private property aligning the same could better suffer the small delay by allowing precedence to the highway traffic and so not only avoid obstructing the latter but decrease the danger of injury by collision.

[4]   Once it is determined that the right of way was in the defendant, it follows that the latter was not required to watch with the same vigilance all abutting private property for the coming of possible obstructions to his progress as he would be required to watch along the surface of the highway ahead of him and at intersecting public ways.   Traveling at a high rate of speed—thirty-five miles an hour being permitted—the duty was imperative that such driver should keep his eyes on the road.   He was not required to anticipate the unexpected event that a motor vehicle would suddenly issue forth from private grounds and cross the highway in front of him.   He had not the duty to look across hedges or through shrubbery, nor yet to scan the ground within the line where shade trees bounded the footway outside the property line.   We apply here the conclusions just drawn only for the purpose of showing that a situation existed which made it the duty of the driver of plaintiff's car to give ample warning by audible signal of his approach to the main thoroughfare.   The Motor Vehicle Act (Statutes of 1915, page 397) provides that ''every person operating a motor vehicle shall sound said bell, gong, horn, whistle or other device whenever necessary as a warning of danger.''

In the answer of defendant it was expressly alleged that plaintiff's car was "propelled along said private driveway and upon and across said highway at an excessive and negligent rate of speed and without any warning being given by the person in charge of said car of the presence of the same upon or the movement thereof along said private driveway." It was further alleged that said driver did not use ordinary diligence and care to discover the presence of approaching cars on the boulevard. The trial judge found that plaintiff's driver was not negligent and that plaintiff's car was not driven on to the highway "at an excessive speed, or without giving drivers upon said highway any warning of the movements of said car." It was sufficiently established and without contradiction that George Uhl, the driver of plaintiff's car, sounded no horn or other signal giving warning of his approach from the driveway. In his own testimony he makes no mention of having given any such signal. The defendant testified that he heard no signal or horn sounded by anyone. A witness who was riding with defendant testified that he "heard no signal of any kind prior to the accident." One witness for plaintiff testified that he heard the crash of the automobiles in collision; that he had seen plaintiff's son drive the automobile away from the home toward San Fernando, and that he heard the sound of a horn. He did not tell from what direction that sound came, nor did he by any language indicate whether that sound came from the plaintiff's automobile or from some passing machine upon the highway. Plaintiff's machine at no time was stopped in its progress from the driveway across the highway to the point where it was struck. Traveling at from eight to ten miles per hour, as George Uhl said it was, the time occupied by its movement from the property line on to the paved portion of the highway would be a matter of about two seconds. We have already pointed out that the estimate of George Uhl as to the distance (1,000 feet) that defendant's car was away from the line of the driveway at the time he first saw it was utterly unreliable. It was so at variance with other facts and circumstances as to furnish no conflict whatsoever with the testimony of the defendant and his witnesses regarding the situation which immediately preceded the collision. The defendant testified that he had been driving on the right-

hand side of the road immediately prior to the accident and was looking straight ahead along the road; that there were no street intersections ahead for a distance of 400 or 600 feet and the country was sparsely built up, there being an occasional ranch. A witness, called on behalf of the defendant, testified that in his opinion a car of the weight of that of the defendant's, on level asphalt pavement, with three passengers, going at the speed of thirty miles an hour, would require from eighty to one hundred feet within which to be brought to a stop. That the car of the defendant must have been approximately at the place and distance where the defendant's testimony stated it to be may be demonstrated by taking into account the speed of forty miles per hour at which George Uhl said defendant's car was traveling, together with the distances and rate of speed given by the witness George Uhl as referring to the machine which he himself was operating. Regardless of whether George Uhl was negligent in miscalculating the distance between his car and that of the defendant, and was therefore negligent in not conceding the right of way to the approaching machine, it very clearly appears that, had he obeyed the law as well as observed the rule of common prudence, he would have given notice of his approach to the highway by some signal audible to those who might take warning from the sound. Under the evidence we are satisfied that it clearly appeared that the negligence of the driver of the plaintiff's car contributed proximately to the cause of the collision. The findings of the trial court in that particular are not sustained by the evidence.

The judgment is reversed.

Conrey, P. J., and Shaw, J., concurred.