120 So.2d 42 (1960)
George S. HORMOVITIS, Jr., Appellant,
v.
MUTUAL LUMBER COMPANY, a Florida Corporation, Appellee.
No. 1528.
District Court of Appeal of Florida. Second District.
April 22, 1960.
Rehearing Denied May 12, 1960.
*43 Emil Jaczynski and John E. Bassett, Miami, for appellant.
*44 Otis R. Parker, Jr., and C.R. McDonald, Jr., Fee, Parker & Neill, Fort Pierce, for appellee.
ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, filed an action for damages for personal injuries alleging that while plaintiff was operating a tractor trailer tank truck on a feeder road into U.S. Highway 1, defendant's truck driver negligently struck plaintiff's truck, thereby severely injuring plaintiff. The defendant answered denying the allegations of negligence and alleged plaintiff's contributory negligence as an affirmative defense. Notice for trial was set and thereafter plaintiff's deposition was taken by the defendant. The defendant then filed a motion for summary judgment supported by plaintiff's deposition and by an affidavit of the operator of defendant's truck. A hearing on this motion was held at which time the plaintiff moved for a judgment on the pleadings. On August 4, 1959, the lower court denied plaintiff's motion but the same date granted summary final judgment in favor of the defendant, from which judgment the plaintiff has taken this appeal.
The facts are as found in the plaintiff's deposition and in the defendant driver's affidavit. The defendant driver, Ben Williams, stated that he was proceeding south on U.S. No. 1 at 35 miles per hour driving a tractor trailer loaded with 16,000 feet of lumber somewhere around 7 miles north of Fort Pierce at approximately 6:30 a.m. on March 25, 1958, when he saw plaintiff's truck come through a stop sign onto U.S. No. 1. Williams further stated that he applied his brakes, skidding 8 feet, that he pulled to the left to avoid hitting the plaintiff, but was unable to stop and collided with the plaintiff's tractor and trailer.
The plaintiff, in his deposition, testified that he has been a truck driver most of his adult life; that he was operating a truck with a governor on it set at 52-54 miles per hour; that it was foggy and he still had his running lights on; that he had traveled the route from Port Everglades numerous times; that he was traveling the feeder road to U.S. No. 1; and that he began to bring his tank wagon to a stop at the intersection on the west side of U.S. No. 1. When he tried to stop he felt his brake-air pressure "fade out" (decrease). He then threw on the emergency brake when the air pressure warning buzzer began to ring. Upon realizing that he could not stop, and seeing defendant's truck coming south on U.S. No. 1, plaintiff proceeded to get his truck under control and try to beat defendant across the highway. The plaintiff made it across the south-bound lane of the highway and onto the dirt island in the middle. The defendant driver apparently swerved to the left, following plaintiff onto the island, and at that point collided with plaintiff. Thus the south-bound lane was clear at the time of the collision. Plaintiff testified that he first saw defendant driver when the defendant's truck was approximately 100 feet away and estimated defendant driver's speed at approximately 35 miles per hour.
The plaintiff contended in the lower court and contends in this court that the above set of facts presents genuine issues for a jury determination especially as to contributory negligence and the applicability of last clear chance. The testimony of defendant's driver, Ben Williams, concerning the instant at which he discovered the plaintiff's peril is as follows:
"* * * Just as I approached this intersection, this gas truck, without stopping or slowing down, ran through the stop street onto U.S. Highway No. 1 directly in front of my truck. I applied my brakes as soon as the gas truck pulled in front of me, and left about eight (8) feet of skid marks on the pavement. I pulled to the left in an attempt to avoid the collision, but I was so close to the truck when he pulled in front of me, and it happened so suddenly that I was unable to stop and collision occurred."
*45 The plaintiff stated in his affidavit that he saw the defendant's truck when it was approximately 100 feet away; that he estimated it to be traveling at 35 miles per hour; and that at that instant, he, the plaintiff, decided to try to cross the defendant's south-bound path ahead of the defendant to avoid a collision. Drawing all inferences from the plaintiff's statement in a light most favorable to the plaintiff, and assuming that the defendant's driver saw the plaintiff at the same instant that the plaintiff saw the defendant's truck approaching approximately 100 feet away from the point of collision and traveling at a rate of speed of 35 miles per hour, the defendant's driver would have had between 1.8 and 2 seconds to take any evasive action in an attempt to avoid a collision.
The principle is well established that when one is confronted with a sudden peril requiring instinctive action, he is not, in determining his course of action, held to the exercise of the same degree of care as when he has time for reflection. 5 Am.Jur. Automobiles and Highway Traffic, sec. 211; 3 Fla.Jur. Automobiles, Etc., sec. 106. Moreover, the defendant's driver would have a right to assume that the plaintiff would stop in accordance with the stop sign which was posted at the point where the side road intersected U.S. Highway No. 1. See 3 Fla.Jur. Automobiles, Etc., sec. 93. In addition, it is noted that the plaintiff apparently did not sound his horn or otherwise warn the oncoming traffic of his inability to bring his vehicle to a stop before entering the highway. In considering the short interval of time in which the defendant could have acted along with the other extenuating circumstances set forth previously herein, the defendant had opportunity only for instinctive action, and such action, without proof of unfitness to act in an emergency, could not provide a basis for a finding of negligence.
While it is true that the issue of care in an emergency is one of fact, the same as in negligence situations generally it should be remembered that the circumstances call for sudden action and that the excitement and lack of time to think naturally affect the normal action of judgment, therefore these factors should be given consideration as a matter of law in certain situations. For example, where the plaintiff approached a bus stalled upon an upgrade, and the plaintiff stopped, and then upon the bus driver's signal turned to his left to go around when his car was struck by another vehicle going in the opposite direction, the Supreme Court held in Rodi v. Florida Greyhound Lines, Inc., Fla. 1952, 62 So.2d 355, that negligence cannot be attributed to the plaintiff as a matter of law in failing to extricate himself from such a position.
It is clear that situations can and do arise in which the sudden emergency may leave the actor no time for thought or the weighing of alternative courses of action and therefore the speedy decision which is made is based very largely upon impulse or instinct. Consequently, the law does not require a defendant in a situation of sudden peril, not created by the defendant, to act with the same care and skill required of a person who has ample time to exercise his judgment. Panama City Transit Co. v. DuVernoy, 159 Fla. 890, 33 So.2d 48.
Thus in a true emergency or sudden peril situation, the actor apprehends danger and stimulates a muscular response to avert it. This is purposeful action, precipitated by a mental operation, though not on the plane of conscious deliberation. We are cognizant however, that little benefit would be derived from instructing the jury concerning such psychological subleties as behavior patterns, conditioned reflexes, instinctive action and similar phrases. This does not mean that every alleged emergency situation presents such problems for such is not true. When a person operates a motor vehicle on a busy highway under present day traffic conditions, he must be prepared for the sudden appearance of obstacles in the street or other vehicles at *46 intersections, and his failure to maintain an objective standard of ordinary care and skill under the circumstances will render him guilty of negligence. This means that even where there may not be time for a conscious weighing of alternatives, the driver's behavior pattern, his responses, his skill, must be so educated as to be as good as that of a driver of ordinary competence acting under similar circumstances. Any further refinement of the standard would not be practicable for submission to the jury. The ordinary emergency situation enables the jury to make reasonable allowance for the time element in judging the actor's conduct by the traditional standard. However, cases of sudden emergency may arise where, from the evidence, the court could rule as a matter of law that the defendant's response or reaction to the crisis measured up to that of a driver of ordinary competence acting under similar circumstances. Such we believe to be true in the instant case.
A case which is illustrative of a situation in which reasonable men could not differ in finding no negligence on the part of the defendant is Uhl v. Fertig, 56 Cal. App. 718, 206 P. 467. In the Fertig case the defendant was proceeding along the highway at approximately 35 miles per hour when the plaintiff's vehicle suddenly emerged from a private driveway on the defendant's right. The defendant then swerved to the left side of the road, instead of continuing on the right side of the road, to avoid colliding with the plaintiff. The two vehicles collided on the left side of the road. In applying the emergency doctrine in behalf of the defendant, the District Court of Appeal of California, Second District, held that the defendant was not guilty of any negligence as a matter of law in swerving to the left even though had he continued straight ahead on the right side of the road, the accident probably would not have occurred.
Similarly, the Court of Appeals of Kentucky in Tate v. Collins, 266 Ky. 322, 98 S.W.2d 938, held that a truck driver who swerved to the left to avoid striking a child, who had darted onto the right side of the road, and collided with an oncoming vehicle was not guilty of negligence as a matter of law on the basis of the sudden emergency rule. See also Annotations 6 A.L.R. 680; 27 A.L.R. 1197; 79 A.L.R. 1277; and 111 A.L.R. 1019.
It has long been settled that a court may direct the verdict when reasonable men could not differ on the issue presented. Likewise, when the undisputed facts show that there was no negligence on the part of the defendant or that the negligence of the plaintiff was the proximate cause of the accident, there is nothing to submit to the jury. Fields v. Quillian, Fla. 1954, 74 So.2d 230. In the instant case there was no evidence that the defendant saw or should have seen the plaintiff's truck or that the defendant should have expected the plaintiff to enter and cross U.S. Highway No. 1 without stopping. Certainly the defendant while driving south on the highway was entitled to assume, as he did, that others would observe and obey traffic regulations, warning signals and stop signs. See 3 Fla.Jur. Automobiles, Etc., sec. 93; Gosma v. Adams, 102 Fla. 305, 135 So. 806, 78 A.L.R. 1193; Annotation 164 A.L.R. 8.
In the instant case there is no reasonable inference that the defendant acted other than as a reasonable, prudent person under the circumstances. The defendant was not aware of plaintiff's perilous situation and thus could not have stopped his heavily loaded truck. He took the only instinctive evasive action that appears reasonable under the circumstances. We, therefore, hold that the lower court correctly ruled that the defendant was entitled to judgment as a matter of law on the basis that no facts existed upon which any negligence of the defendant could be predicated.
The judgment of the lower court is affirmed.
*47 KANNER, J., concurs.
MILLEDGE, STANLEY, Associate Judge, dissents.
MILLEDGE, STANLEY, Associate Judge (dissenting).
Regretfully, I must disagree with the affirmance of the summary judgment.
First, I disagree with the Court's finding of no evidence that the defendant's driver saw or should have seen the plaintiff's tanker truck. Since the plaintiff says that he saw the defendant's truck approximately 100 feet from the intersection it can be inferred that the reverse is at least possible. Whether a tanker truck visibly approaching a main highway but not slowing because the air brakes have failed is something which the other driver should see and concern himself with is, I think, a question of fact.
Secondly, I disagree that the only permissible inference from the affidavits limits the time available to the defendant's driver to apprehend danger and to act to 2 seconds. The estimates of speed and distances are not given as measurements. They could be off quite a bit either way. The defendant's truck laid down skid marks. That affects speed. Since on the motion the plaintiff is entitled to all favorable inferences he is entitled to the inferences which give the defendant's driver measurably more time than 2 seconds
Thirdly, assuming that two seconds for warning and action is all the time that possibly could be available I am not convinced that it is a scientific fact to be judicially noticed that conscious thought is impossible in so short a time and that reaction to danger is not a thought process. I agree, of course, that shortness of time is an important factor in weighing the significance of a bad choice of action but that is a consideration for the trier of the facts. What is here being decided is that in two seconds it is impossible to hold a man accountable for making the wrong choice since it is a neurological fact that he has no time for choice and therefore cannot be accountable. I am not in the least prepared to deny the existence of the scientific fact assumed but I am prepared to express my unwillingness judicially to notice a fact that is not a matter of common knowledge and no reference to an appropriate source of expert knowledge is stated. That the same kind of problem in the area of criminal responsibility is dealt with as a fact for the jury adds greatly to my trouble. Our courts have not assumed as a scientific fact that any particular period of time is so short that a conscious design to kill and the execution of the design cannot be accomplished. In the recent case of Mackiewiez v. State, 1959, 114 So.2d 684, 691, the Supreme Court upheld a verdict of guilty without recommendation of mercy when only an "instant" elapsed between discovery of the deceased's presence and the fatal shot. The Court repeated the language of previous cases which have become a standard charge to the jury in capital cases. "It is not necessary that such purpose and intent to kill another human being shall exist for any particular length of time; it is sufficient if between the formation of the purpose or intent to kill and the act of killing there elapses enough time that the slayer is fully conscious of a deliberate purpose and intent to kill another human being * * *" Since a jury may find "any particular period of time" sufficient in which to determine conduct and the bad choice of conduct may result in electrocution, I fail to see why a jury cannot make a determination of the sufficiency of time within which to act in the face of danger the consequence of the act being liability for damages.
I am not at all suggesting that the defendant's driver has offered a poor reason for making what turned out to be the wrong choice of conduct when the safe one of proceeding straight ahead was available. It might even be an understatement *48 to predict an excellent chance of convincing a jury that the driver's choice was a reasonable one. I agree, of course, that a bad choice in an emergency is not negligence as a matter of law. But this is not to say that a bad choice, even in an emergency, cannot be an act of negligence as a matter of fact.