146 So.2d 601 (1962)
Sue GREEN, a Minor through Her Mother and Next Friend, Mildred Oates, Appellant,
v.
Jack Gordon LOUDERMILK and Nellie Virginia Loudermilk, Appellees.
No. 3071.
District Court of Appeal of Florida. Second District.
November 7, 1962.
Marshall G. Curran, Jr., of Watkins & Curran, Fort Lauderdale, for appellant.
Blackwell, Walker & Gray, Miami, for appellees.
WHITE, Judge.
Appellant Sue Green and her mother were plaintiffs in an action for damages arising out of an automobile-pedestrian collision in Broward County, Florida. The sixteen year old Sue Green was walking across a four lane state highway in company with another girl when she was struck by an automobile driven in an allegedly negligent manner by the defendant Jack Loudermilk. This appeal is from a final judgment for the defendant pursuant to a directed verdict at the conclusion of all the evidence.
On defendant's earlier motion for a directed verdict at the close of plaintiff's case the trial court stated his belief that the *602 plaintiff had not made out a case but that, in deference to caution, he would deny the motion. Upon denial of this motion testimony was introduced in behalf of the defendant. The plaintiff offered no testimony in rebuttal. The defendant again moved for a directed verdict and the motion was granted. The plaintiff's prime point on appeal is that the evidence was sufficient to take the case to the jury.
The facts appearing from the record are exceptionally well defined for a case of this kind. The defendant was driving north within the prescribed forty-five mile speed limit when he first saw the plaintiff Sue Green and her companion several hundred feet ahead positioned between the two southbound lanes of the highway. There were no nearby crossings serviced by automatic signals. The girls proceeded east and reached the yellow lines marking the center of the four lane complex. The defendant, observing the girls at that point, removed his foot from the accelerator and rested it on the brake, slowing his automobile to a speed of thirty to thirty-five miles per hour while traveling constantly in the right northbound lane. Ahead of the defendant a motorist in the left northbound lane drove past the girls, and at this juncture events began to follow each other in rapid succession.
After the passage of the first car the girls were at or within the left northbound lane. The plaintiff's companion then darted across the left lane and into the right lane in front of defendant's automobile which was approaching at a distance of from thirty-five to forty-two feet. The defendant put on his brakes and swerved to the left partly into the left lane to avoid striking the first girl. In so doing he struck the plaintiff who had started across, stopped and then moved forward again into the diverted path of the defendant's automobile. According to the investigating officer, a trooper of the Florida State Highway Patrol, the skid marks of the defendant's automobile indicated a minimum speed of thirty-one miles per hour at the time the brakes were applied. The plaintiff was carried forward on the left hood of defendant's automobile and fell to the pavement after the automobile came to a complete stop. The testimony and the pictorial exhibits clearly indicate that the point of impact was in the left lane but close to the dividing line between the left and the right northbound lanes. The defendant's automobile came to rest partly in the left lane and partly in the right lane.
The defendant and an eye witness, Jerome B. McTighe, were among those offering assistance to the plaintiff who obviously sustained painful bruises and lacerations. In attempting to walk immediately after the accident, she gave up, complaining of her hip, and was taken to a hospital. Shortly thereafter she was visited by the defendant and the aforementioned Jerome B. McTighe. Apparently, as it later developed, there were no broken bones, the most obvious residual effect being a bad scar on the plaintiff's right arm where two corrective operations had been performed because of an unusually severe laceration. At the time of the trial the plaintiff also complained of recurring discomfort in her leg.
It is the defendant's position that there was no evidence indicating negligence on his part and that the emergency was not caused by him and that when it arose he acted instinctively and reasonably to avoid striking the first girl in the belief that he might pass between her and the plaintiff; that, as it turned out, he was unable to avoid one of the girls without striking the other because he was, in effect, "whipsawed" by the unpredictable movements of the plaintiff and her companion. It is urged on behalf of the plaintiff that the defendant had not been driving with due caution and that even when confronted with the emergency situation he still could have avoided striking her or her companion if he had exercised reasonable care.
In the circumstances of this case the rights and responsibilities of the plaintiff and the defendant were reciprocal. *603 King v. Griner, Fla. 1952, 60 So.2d 177, 178. Each was obliged to exercise ordinary care, but a plaintiff cannot recover against a defendant unless he makes at least a prima facie showing of negligence on the part of the defendant.
Of the six witnesses who testified only the plaintiff, the defendant and Jerome B. McTighe actually saw what took place. The plaintiff's girl companion had moved north and did not testify. The defendant's testimony was substantially as set forth in our recitation of facts and this testimony was not appreciably contradicted. It was in fact corroborated in its vital particulars. The plaintiff did testify that the defendant's automobile appeared to be weaving while some distance down the highway but that it was travelling in the right lane. Her statement that at no time had she gone beyond a couple of steps into the left northbound lane was overwhelmingly refuted by other testimony and by the pictorial exhibits. Her testimony was not only palpably deficient in her own behalf but tended to corroborate the defendant, particularly in the light of her extra-testimonial statement attested by the defendant and by witness Jerome B. McTighe, a motor vehicle operator employed by the Miami Transit Company. He testified:
"Q. Did you notice anything unusual about the girls as they got to the double center line?
"A. Yes, they were kind of dancing in an erratic way, and I believe that the young lady sitting there [plaintiff] had a portable radio and * * * the other young girl * * * went across the intersection and this young lady sitting in the court room here started, stopped and started again. At that point, the car, this 1957 Chevrolet came out, or bore to the left * * *.
"Q. Had you noticed anything unusual about the defendant's car before the one girl darted across there, his lane of travel? Do you follow me?
"A. No.
"Q. Was he weaving in his line of travel or swerving?
"A. No."
The witness further testified that after the accident occurred, he immediately stopped his vehicle and went to render assistance.
"Q. Did you hear this young lady say anything right at the scene before the highway patrolman arrived?
"A. Yes she did.
"Q. Can you tell the jury what she said?
"A. I cannot give it verbatim, but words to the effect, `Please don't blame that man or that driver of that car, he was not at fault.'"
He testified that the plaintiff was coherent at the time and spoke the words very clearly. The defendant himself testified that he heard the same statement by the plaintiff.
The import of the judgment under review is that the essential facts of the case were established by the evidence without any direct or reasonably inferential contradiction and that, as a matter of law, they added up to no liability. The judgment is not reversible in the absence of prejudicial error clearly demonstrated. Baro v. Wilson, Fla.App. 1961, 134 So.2d 843, 845; Hormovitis v. Mutual Lumber Co., Fla.App. 1960, 120 So.2d 42, 45; Carter v. Florida Power & Light Co., 1939, 138 Fla. 220, 189 So. 705, 707.
We revert in this connection to the plaintiff's contention that, assuming without conceding contributory negligence, the case should have been submitted to the jury with an appropriate charge on the doctrine *604 of "last clear chance." We find no basis for disagreement with the trial court's rejection of this contention. There is nothing in the evidence from which it reasonably could be inferred that the defendant failed to exercise ordinary care in the face of the sudden unprovoked emergency that confronted him. Thus is missing at least one of the essential elements to make the doctrine of last clear chance applicable. Frohm v. Metzger, Fla.App. 1961, 134 So.2d 254, 256; James v. Keene, Fla. 1961, 133 So.2d 297, 299.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.