346 So.2d 92 (1977)
WARNING SAFETY LIGHTS, INC., and Ballenger Corporation, Appellants,
v.
Yalila GALLOR and Manuel Gallor, Appellees.
No. 76-226.
District Court of Appeal of Florida, Third District.
May 3, 1977.
Rehearing Denied June 8, 1977.
*93 Virgin, Whittle & Popper, Podhurst, Orseck & Parks, Miami, for appellants.
Horton, Perse & Ginsberg, Ratiner & Glinn, Miami, for appellees.
Before PEARSON, HAVERFIELD and NATHAN, JJ.
PEARSON, Judge.
Warning Safety Lights, Inc., and Ballenger Corporation were sued by Yalila Gallor and Manuel Gallor for injuries sustained by Yalila Gallor when she crashed into a median wall on State Road 826 (Palmetto Expressway) while attempting to avoid hitting traffic cones which were in her lane of traffic. The gist of the plaintiffs' case was that the defendants, who utilized the cones to close off lanes of traffic that were being repaired, were negligent in placing the cones or in failing to weigh down the cones so that they would not be moved by the wind or by passing traffic.
The case was tried before a jury and a verdict in the amount of $125,000.00 was returned for Yalila Gallor and $25,000.00 for her husband, Manuel Gallor. This appeal is from the judgment entered pursuant to the verdict and from the order denying defendants' motion for a new trial. The defendants have argued five points supported by more than eighty assignments of error. Defendants' point III urges that the proof was insufficient to establish liability. Point V urges that the amount of the verdict was excessive. The remaining points urge that the defendants are entitled to a new trial because of claimed errors in the conduct of the trial.
The evidence viewed in the light most favorable to the verdict of the jury, as it is required to be viewed on this appeal, see Midstate Hauling Company v. Fowler, 176 So.2d 87 (Fla. 1965); and Land v. Patroni, 214 So.2d 94 (Fla.1st DCA 1968), establishes that Mrs. Gallor, who was eight months pregnant, was driving in a lawful manner on the Palmetto Expressway in a northerly direction. There were four northbound lanes but the left lane was closed. Mrs. Gallor was traveling in the left lane closest to the closed lane. She was traveling at approximately 45 to 55 miles per hour when she saw the car in front of her suddenly move to the left. At that point, she saw an orange cone in her lane of traffic and went to the left to avoid it. The car in front of her then suddenly moved to the right and she then saw another cone in her line of travel. She tried to turn to the right to avoid that cone but because of another car in that lane, she was forced to the left and went into the wall. Mrs. Gallor was taken to the hospital and the baby was delivered stillborn two days later.
Mrs. Gallor, who was employed as a bookkeeper at a weekly salary of $150.00, had not returned to work at the time of the trial, eleven months later. She claimed both physical and emotional damage.
Defendants' negligence was premised upon their duty to perform their work in a reasonably safe manner so that the plaintiff would not be endangered. The defendant Ballenger Corporation was the contractor for the construction. Ballenger Corporation had entered into a subcontract agreement with the defendant, Warning Safety Lights for the placing and maintenance of the work barriers. The liability issue at trial evolved around the defendants' placement and maintenance of the *94 traffic cones. The prime contract between the State of Florida and Ballenger and the subcontract between Ballenger and Warning Safety Lights imposed a duty, aside from any common law duty, upon the appellants to maintain proper traffic control for the safety of the public during the course of the construction. Specifically, the contracts required that the minimum traffic control safety standards provided by the Florida Safety Manual must be observed. The Florida Manual, which was by stipulation published to the jury, required[1] (1) that where space permits, the warning devices should be placed a minimum of two feet from the edge of the traveled way and (2) that traffic cones must be weighted or fastened down so they will not move or tip from natural wind or the wind created by passing vehicles.
Evidence was presented which, if believed by the jury, was sufficient to establish that upon the day of the accident, at and near the place where the accident occurred, lane closure was accomplished by defendants' placing single cones, which weighed about ten pounds each, on the skipline dividing the closed lane from the adjacent lane of moving traffic. The employee who placed the cones testified that on the day in question, after setting up the subject lane closure by placing single cones from 20 to 35 feet apart along the skipline, he rode a loop patrol of the area for the purpose of retrieving and replacing cones which had been blown over or knocked over. He further testified that he saw cones blown over and knocked over.
Defendants' point directed to the sufficiency of the evidence to prove negligence urges (1) that there was no evidence of how these particular cones were displaced and (2) that there was the intervention of an independent efficient cause in that an automobile may have hit the cones and thus displaced them. We hold that the evidence was sufficient to sustain the jury's verdict on both particulars. If, as testified, the cones were not placed inside the skipline as required by the safety manual, it is not fatal to plaintiffs' case that they may have been misplaced by a passing vehicle. Such a result could have been found foreseeable by the jury and the law does not hold otherwise. See Railway Express Agency, Inc. v. Garland, 269 So.2d 708 (Fla.1st DCA 1972). The question of whether the misplacement of the cones or the failure to weigh them down was the proximate cause of the plaintiff's injury was properly one for the jury. See Florida Power & Light Co. v. Bridgeman, 133 Fla. 195, 182 So. 911, 920 (1938); and Evancho v. Thiel, 297 So.2d 40 (Fla.3d DCA 1974).
The defendants' remaining points urge a new trial because of claimed erroneous and prejudicial rulings of the trial court. The principal contention is that the trial judge allowed improper hypothetical questions to be propounded to plaintiffs' witnesses and improperly excluded some of the questions propounded by the defense. *95 The trial was long and exhaustive. It was well-tried by both sides and called for a great many rulings on evidence by the trial judge. It is clear from a reading of the portions of the record referred to in the briefs that no pattern of prejudice to either side appears. The rulings complained of, if error, do not appear to us to have been prejudicial or reversible error. The often repeated principle of appellate review that the appellant is entitled to a fair trial but not a perfect one applies in this case. We will not reverse in those instances where the errors complained of do not result in a miscarriage of justice. See Small v Colonial Inv. Co., 92 Fla. 503, 109 So. 433 (1926); and Demmy v. Sligh, 189 So.2d 843 (Fla.2d DCA 1966). The trial judge must of necessity be granted a great deal of discretion in ruling upon the qualifications of expert witnesses and the propriety of the questions expounded. See Krohne v. Orlando Farming Corporation, 102 So.2d 399 (Fla.2d DCA 1958); and Home Insurance Company v. Wiggins, 147 So.2d 157 (Fla.1st DCA 1962). In the absence of a clear showing of prejudice to the appellants' case, these rulings will not produce a reversal. See Green v. Loudermilk, 146 So.2d 601 (Fla.2d DCA 1962); and Reliable Services, Inc. v. Taft, 247 So.2d 97 (Fla.3d DCA 1971).
Defendants' point claiming reversible error because of comments of plaintiffs' attorney during the cross-examination of an adverse witness is not supported by the record.
The last point claims a new trial was mandated because the verdicts were excessive. This point does not present error in this case because of the full instruction to the jury on the issue of damages and the holding in Nitram Chemicals, Inc. v. Parker, 200 So.2d 220 (Fla.2d DCA 1967). See also Cloud v. Fallis, 110 So.2d 669 (Fla. 1959).
Affirmed.
NOTES
[1] Need for Standards. Definite standards for warning devices and lights are most needed in the situation where a dropoff results parallel and adjacent to traffic lanes. This occurs when widening is being done, a new roadway is being constructed in a cut, a storm sewer trunk line is being installed or a bridge is being widened. * * * * * *
"6G-3 Warning Devices. The types of warning devices considered acceptable are Class A through G as shown in figures 7.1 through 7.4. The proper use of these devices is shown in the following charts. Where space permits, the warning devices shall be placed a minimum of two feet from the edge of the traveled way. * * * * * *.
"C-3 A. When cones are used, precautions are necessary to assure they will not be blown over or displaced. This may be particularly critical adjacent to lanes of moving traffic where there may be a wind created by passing vehicles. Some cones are constructed with bases that may be filled with ballast. With others, it may be necessary to provide added weights. These added weights should not be sufficient to present a hazard if the devices are inadvertently struck."
Figure 7.2, attached to the Manual, referring to traffic cones provides:
"1. Cones must be weighted or fastened down so they will not move or tip under wind loads.
"2. Precise configurations may vary from illustrations except for height."